COMMONWEALTH *vs.* NEIL PARHAM.

Suffolk. October 5, 1983. — January 23, 1984.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Admissions and confessions, Waiver of constitutional rights, Assistance of counsel. *Practice, Criminal*, Admissions and confessions, Instructions to jury. *Homicide. Felony-Murder Rule.*

The circumstances of a defendant's confession to murder, while under arrest at a police station, did not require that the confession be suppressed either as the result of coercion or intimidation, or as having been made without a knowing and intelligent waiver by the defendant of his Miranda rights. [837-841]

The judge at a murder trial was not required to instruct the jury concerning the issue of the voluntariness of the defendant's confession where there was no substantial testimony on voluntariness and where defense counsel's references to voluntariness were not sufficiently focused to make the question a "live issue." [841-842]

The record of a murder trial did not indicate that the defendant's confession resulted from police exploitation of a statement by a coparticipant in the murder, which was later suppressed from evidence, where evidence as to this use of the statement by police was merely equivocal and where the presence of other circumstances, including the fact that Miranda warnings had been given the defendant, that adequate time had been allowed him to consider his decision to confess, that the defendant's learning of a warrant issued for his arrest may have prompted him to confess, and that no flagrant police misconduct occurred, were sufficient to indicate that the confession was the product of his free will. [842-844]

The record in a criminal case did not support the defendant's contention that by failing to file a timely appeal his attorney's action denied him effective assistance of counsel. [844-845]

A judge's failure to instruct a jury, in the terms now required by this court's decision in *Commonwealth* v. *Watson*, 388 Mass. 536 (1983), that, in order to apply the felony-murder rule as to a weaponless defendant, they must find that the defendant knew his coparticipants were in possession of a dangerous weapon, did not create a substantial risk of a miscarriage of justice in the circumstances of a case tried seven years before the *Watson* decision. [845-846]

INDICTMENTS found and returned in the Superior Court Department on March 11, 1975.

The cases were tried before *McGuire*, J.

*Steven J. Rappaport* for the defendant.

*David B. Mark*, Assistant District Attorney, for the Commonwealth.

NOLAN, J.   In November, 1975, Neil Parham was tried before a jury and found guilty of murder in the first degree, armed robbery, and armed assault with intent to rob.   Parham's convictions were the result of indictments stemming from a slaying on October 14, 1974, in which Parham and two companions[1] were alleged to have stolen a car and followed a taxicab from downtown Boston until its arrival on Sunnyside Street in Jamaica Plain where it discharged the passengers.   Parham and his companions attacked the taxicab driver and one passenger.   In the ensuing melee, the victim, that passenger, was fatally stabbed.   The booty from this episode was four one dollar bills.

Parham received a mandatory sentence of life imprisonment on the murder charge, with concurrent terms of seven to ten years on the other charges, on November 21, 1975. The case is before us for review pursuant to our powers under G. L. c. 278, § 33E, following the allowance of Parham's petition to file a late claim of appeal by a single justice of this court.

Parham asserts that the following errors require reversal of his convictions:   (1) the admission in evidence of his confession absent a showing by the Commonwealth of a voluntary, knowing, and intelligent waiver of rights secured to him by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and absent a showing that the confession was voluntarily given; (2) the trial judge's failure to instruct the jury, in accordance with Massachusetts' "humane practice," concerning the issue of the voluntariness of the confession; (3) the failure to

---

[1] Only Parham's appeal is before us.   Appeals concerning the other participants have been disposed of.   See *Commonwealth* v. *Brown*, 376 Mass. 156 (1978); *Commonwealth* v. *Taylor*, 374 Mass. 426 (1978).

suppress the defendant's confession as the fruit of illegally obtained evidence; (4) ineffective assistance of counsel by reason of the failure of trial counsel to file a claim of appeal from the first degree murder conviction; and (5) the omission from the jury charge of an instruction that a verdict of guilty of felony-murder based on armed robbery could only be made if the jury found the defendant had knowledge that a coparticipant was in possession of a dangerous weapon. In addition, Parham requests that this court direct the entry of a verdict of a lesser degree of guilt pursuant to G. L. c. 278, § 33E.

Of the issues enumerated above, only the first, relating to Miranda standards and voluntary confessions, is founded upon exceptions saved at trial.[2] Review of all other matters which Parham raises for the first time on appeal, is limited to a determination whether the alleged errors created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Atkins,* 386 Mass. 593, 596 (1982).

For the reasons stated below, we conclude that there was no error as to the Miranda and voluntariness issues, nor does this case present an appropriate occasion for the exercise of our powers under G. L. c. 278, § 33E.

1. *Preliminary events.* The record reveals the following sequence of events leading to Parham's arrest. On a Sunday afternoon, in February, 1975, Boston police Detective Francis J. McCarthy noticed Parham on a Roxbury street carrying a canvas bag with an object protruding from it. Detective McCarthy stopped Parham, identified himself as a police officer, and recognized the object as a "dent puller." He asked Parham to accompany him to the police station because McCarthy was not certain that the dent puller was a burglarious implement. Parham accepted McCarthy's invitation.

---

[2] This case was tried before the Massachusetts Rules of Criminal Procedure became effective. Under rule 22, 378 Mass. 892 (1979), exceptions need no longer be taken. However, a party is required to object or to make known to the court the action which he wants taken. The defendant failed to do so in this case except as to the questions of the waiver of Miranda warnings and voluntariness.

In the police cruiser on the way to the police station, Parham gave Detective McCarthy his brother's name. McCarthy, who was familiar with Parham's family, then realized who Parham actually was, and that there existed an outstanding murder warrant for his arrest. He so informed Parham, who was also aware of the warrant and of the police visits to his mother's home in connection with the murder warrant.

Detective McCarthy placed Parham under arrest for murder as soon as the vehicle stopped outside the police station. Parham surrendered a gun which he had been carrying. McCarthy attempted to recite Miranda warnings, but was interrupted several times by Parham, who begged McCarthy for a "break" and told McCarthy he had tried to reach him concerning the murder warrant, but had been unable to do so.

Once inside the station, McCarthy recited the Miranda rights in full, and asked Parham if he would be willing to speak to Detective Peter J. O'Malley, who was also investigating the Sunnyside Street murder. Parham agreed to do so. Detective O'Malley interviewed Parham, at some point showing him some papers connected with the investigation. There is some conflict in the record as to whether Parham was shown only the warrant for his arrest or another defendant's statement, and this will be discussed later.

Parham agreed to permit a tape recording of his version of the incident on Sunnyside Street. Detective O'Malley repeated Miranda warnings at least once and possibly twice, before and at the outset of the taping. Detective O'Malley told Parham that an attorney from the Roxbury Defenders Committee would be available to him for counselling that day if he so desired, and that when he was arraigned, the court would appoint a "good lawyer," one with "at least ten years' experience." At some point prior to taping, Parham requested that he be allowed to telephone his sister. Her line was then busy but the call was placed later and Parham spoke to his sister subsequent to the tape recording.

The second side of the tape never recorded, probably due to a mechanical failure. The first side of the tape was played at trial. Parham's statement reveals his companions' design to steal an automobile, their plan to follow the taxicab to steal the driver's money, and the incident on Sunnyside Street. Parham's version of the events, if believed, reflected knowledge of the plan, his recalcitrant participation, knowledge that his friends carried pocket knives, and a reluctance on Parham's part to venture beyond the stolen vehicle to the area where the stabbing and robbery occurred. Parham admitted to waiting for one of the participants until he ran back to the car and then they both sped away.

2. *The suppression hearing.* Parham alleges error in the trial judge's refusal to suppress his statement on the theory that there was no valid waiver of his Miranda rights and that the confession cannot, considering the totality of the circumstances, be considered voluntary. Parham asserts that he was "herbed up" (intoxicated by marihuana), and thus unable to make a meaningful and intelligent waiver of his Miranda rights. He avers that the police reference to a "good lawyer" to be appointed at arraignment led him to believe an attorney from the Roxbury Defenders Committee could not adequately assist him in the police station. He states that he was denied access to the telephone until making his statement. Further, Parham contends that, owing to the inherently coercive atmosphere of the police station, his lack of education, and the presence of four police officers during questioning, the trial judge erred in concluding that he made a knowing and intelligent waiver of Miranda warnings. Alternatively, but on the same alleged factual basis, Parham asserts that his confession was not a free and voluntary act.

The trial judge made no findings of fact in denying Parham's motion to suppress. Although they would have proved helpful, their omission is not fatal, for his conclusion is reviewable as a matter of law. Although it would have been prudent for the judge to make findings of fact, we think

that the judge's decision to admit the defendant's statements renders the judge's conclusions as to voluntariness "clearly evident from the record." *Commonwealth* v. *Brady*, 380 Mass. 44, 52 (1980), quoting *Jackson* v. *Denno*, 378 U.S. 368, 378-379 (1964).

In reviewing Parham's contentions, we are aware that two separate questions are before us: first, whether the Miranda requirements have been scrupulously met, and a knowing and intelligent waiver of them made; and second, whether in the totality of the circumstances, apart from formal compliance with *Miranda*, the confession given was the product of a free will, and not the result of coercion or intimidation. *Commonwealth* v. *Williams*, 388 Mass. 846, 851, n.2 (1983). The Commonwealth bears a heavy burden of demonstrating voluntariness, evidence of which must affirmatively appear from the record.[3] Every reasonable presumption against voluntariness will be indulged. *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938). *Commonwealth* v. *Hosey*, 368 Mass. 571, 577 (1975). Where the defendant claims to have been under the influence of drugs, special care must be taken in assessing the voluntariness issue, although intoxication alone is not sufficient to negate an otherwise voluntary act. *Commonwealth* v. *Hooks*, 375 Mass. 284, 289 (1978).

Testimony at the suppression hearing tended to show the following facts surrounding Parham's confession. First, and significantly, Parham was well aware at the time of his arrest of the existence of the murder warrant. Secondly, the testimony of both police officers, at least one of whom had extensive drug enforcement experience, indicated that

---

[3] Cf. *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982). In *Tavares*, we established that the Commonwealth must prove the voluntariness of a defendant's statement beyond a reasonable doubt before submission to a jury. That standard was imposed on the basis of Massachusetts' "humane practice." As the result reached in *Tavares* is not constitutionally compelled, we decline to apply it retroactively. See *Commonwealth* v. *Day*, 387 Mass. 915, 921 n.10 (1983) (reasonable doubt standard as to knowing and voluntary waiver of Miranda rights not retroactive).

Parham did not appear to be under the influence of drugs. They made inquiry concerning his use of narcotics and did not observe signs of intoxication or illness. During the interrogation, Parham made no mention of smoking marihuana. It was only at the suppression hearing that Parham asserted that the influence of marihuana precluded a knowing and intelligent waiver of his rights. Ordinarily, the police are entitled to rely on a suspect's outward behavior and assurances of sobriety and understanding. See *Commonwealth* v. *Garcia*, 379 Mass. 422, 430 (1980). Without evidence of any perceptible manifestation of intoxication, and with evidence that the police made diligent inquiry concerning drugs, we cannot say that there was any error in the trial judge's believing, as he must have, that Parham's self-induced intoxication did not preclude a knowing and intelligent waiver of his rights. *Commonwealth* v. *Hooks, supra* at 289-290. Additionally, despite Parham's limited education, which terminated at the tenth grade, nothing in the record suggests that Parham lacked the intellectual capacity to comprehend his situation. *Commonwealth* v. *Williams, supra* at 852. *Commonwealth* v. *Daniels,* 366 Mass. 601, 607 (1975).

In addition, there is no evidence in the record which supports Parham's allegation that he was denied use of the telephone until he made his statement. To the contrary, police attempted to reach his sister, but the line was busy. Thereafter, they assured Parham that another attempt to reach her would be made, and this was in fact accomplished. This evidence does not suggest the kind of intentional interference which would render the defendant's statements inadmissible. See *Commonwealth* v. *Jones,* 362 Mass. 497, 503 (1972).

There was evidence tending to show that the arresting and interrogating officers recited Miranda warnings on at least two occasions, although Parham's memory of such recital, and his indication that he understood those warnings, appeared dim at the suppression hearing. The trial judge was free to disbelieve Parham's statements, particularly be-

cause he testified to some recollection of mention of rights, and we will not disturb this implicit finding on appeal. Strict compliance with formal Miranda warnings coupled with the evidence of Parham's knowledge of the existence of the warrant, permits the conclusion that rather than prolong the agony of the criminal investigation, Parham chose to waive his constitutional rights.

Further, police remarks concerning the availability of an attorney from Roxbury Defenders Committee, followed by the appointment of an attorney at arraignment, cannot fairly be said to have been in denigration of Parham's right to counsel.

We find no error in the trial court's conclusion that Parham knowingly and intelligently waived his Miranda rights, and that police scrupulously respected those rights. In all the circumstances, the prophylactic purpose of the Fifth Amendment's exclusionary rule — to discourage coercive or improper police conduct — has been met. *Commonwealth v. Garcia, supra* at 430.

The next issue is whether the confession itself was a free and voluntary act. This inquiry focuses on no particular set of facts, but leads us to consider whether, under the totality of relevant circumstances, the confession was the product of physical or psychological coercion, or that it can be said that the confession was a free and voluntary act, and not the product of coercion. *Commonwealth v. Mahnke,* 368 Mass. 662, 679-680 (1975), cert. denied, 425 U.S. 959 (1976).

Although we have recognized an inherently coercive element within the police station setting, that alone is not enough to support a finding of involuntariness. *Commonwealth v. Bookman,* 386 Mass. 657, 660-661 (1982). Here, although Parham was interrogated in the hectic milieu of the police station, nothing suggests the kind of brutality which we have previously found reprehensible. See *Commonwealth v. Harris,* 371 Mass. 462, 466-467 (1976). Testimony at the suppression hearing indicated that Parham was asked whether he would speak to the investigating detective about the Sunnyside Street murder, that there were thorough

and careful explanations by the police of what they were concerned about, and that Parham was asked whether he objected to taping the statement. The only conflicting evidence was Parham's testimony that the police yelled at him. Given the fact that Parham admitted, albeit grudgingly, that he cooperated with the police, and without further evidence of coercion or intimidation, the record supports the conclusion that Parham's statement was voluntary. There being no error in the trial judge's implicit determination of voluntariness at the suppression hearing, there was also no error in permitting testimony at trial to establish the voluntariness of Parham's statements.

3. *Failure to instruct the jury on voluntariness.* Under Massachusetts' "humane practice," a trial judge, having made an initial determination concerning the voluntariness of a confession, must instruct the jury to pass on the voluntariness of the confession if voluntariness is a live issue at trial. *Commonwealth* v. *Alicea,* 376 Mass. 506, 523 (1978). The initial judicial determination of voluntariness is required by the United States Constitution. *Jackson* v. *Denno,* 378 U.S. 368 (1964). Although determination by the jury is not constitutionally required, it is a matter of long-standing practice in Massachusetts. *Commonwealth* v. *Cole,* 380 Mass. 30, 40 (1980). Generally, submission of the voluntariness issue to the jury must be the subject matter of an objection, exception, or request for instruction in the absence of conflicting testimony concerning voluntariness. If there is evidence on the issue, there is an obligation on the judge sua sponte to submit the issue to the jury on appropriate instructions. See *Commonwealth* v. *Cole, supra* at 41; *Commonwealth* v. *Chung,* 378 Mass. 451, 458 n.8 (1979). In the absence of an objection, exception, or request for instruction, review of failure to submit the voluntariness issue is confined to a determination whether, under G. L. c. 278, § 33E, there has been a showing of "grave prejudice or substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Brady,* 380 Mass. 44, 54 (1980).

The present case, involving no substantial testimony on the issue of voluntariness or intoxication, fails to support a determination of grave prejudice or a miscarriage of justice. Parham's trial counsel in final argument made only fleeting reference to this issue. He made no reference to voluntariness per se, but only in connection with assessing the police officers' credibility. Trial counsel also made reference to the police's obligation to inquire about drug use while interrogating Parham, and to comply with *Miranda*. Nevertheless, those references are not sufficient to indicate to the judge that his attention ought to be directed to passing on the voluntariness question. The references to voluntariness were not sufficiently focused so to make the question a "live issue." See *Commonwealth* v. *Tavares*, 385 Mass. 140, 150 (1982).

4. *Failure to suppress the confession as the "fruit" of an illegally obtained confession.* Parham asserts that his confession should be suppressed as the product of the illegally obtained and subsequently suppressed statement of Lawrence Taylor, who was also charged in connection with the Sunnyside Street slaying. *Commonwealth* v. *Taylor*, 374 Mass. 426 (1978). Specifically, Parham argues that he was shown the Taylor statement during the time that he was in custody, and that it was not until he saw the statement that he decided to confess.

The test of the admissibility of a confession which is the fruit of an earlier illegality, announced in *Wong Sun* v. *United States*, 371 U.S. 471 (1963), is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488, quoting J. M. Maguire, Evidence of Guilt 221 (1959). We recently addressed this issue and said that a determination of voluntariness sufficient to purge the primary taint must be resolved in light of (1) the presence or absence of Miranda warnings; (2) the temporal proximity of arrest and confession; (3) the presence of intervening circumstances; and

(4) the purpose and flagrancy of official misconduct. *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 258 (1982).

Here the evidence was sufficient to support a finding that the primary taint, if any, had been purged, though we deprecate again the absence of written findings. First of all, it is arguable whether the Taylor statement was used in obtaining Parham's statement. Parham alleges that he saw certain investigative papers concerning Sunnyside Street, but merely "guessed" that he saw Taylor's statement. The police testified that Parham was not shown Taylor's statement, but rather Parham's own arrest warrant. During the taping of Parham's confession, only a passing reference was made to any statement given by another involved in the incident, and this was done in such fashion as to indicate that the police had not laid the Taylor statement before Parham or made other use of it. The police testified that Parham referred to Taylor and another suspect at the close of the interview, not before or during it. There is some indication that Parham had been independently implicated by Taylor's girl friend, apart from Taylor's statement. In short, the record does not indicate that Parham's statement was the result of exploitation of the Taylor statement.

As to the other factors, we have already noted compliance with *Miranda*, although that alone would not cure any taint. *Commonwealth* v. *Bradshaw*, *supra* at 258. However, notwithstanding that Parham confessed shortly after his arrest, he was not denied time in which to consider his decision to speak with police. Parham's knowledge of the existence of a warrant for his arrest may have motivated him to confess rather than engage in a protracted game of cat and mouse with the police. There was testimony from Detective McCarthy that Parham had said, "I want to give myself up" and, "I'm tired of running." Additionally, some two months had passed between the giving of the Taylor statement and Parham's confession. Finally, the police conduct in question here hardly can be said to be "flagrant misconduct." The police could not have been aware at the time Parham made his statement that the Taylor statement,

if it was utilized at all, would later be suppressed. We have discussed on several occasions that the exclusion of evidence purportedly resulting from illegally obtained evidence necessitates a balancing of the deterrent purpose of the exclusionary rule and the public interest in prosecuting crime, and have noted that where there is a truly voluntary decision to testify, or, as in this case, to confess, that decision should not be overridden unless extreme circumstances require suppression to deter further resort to the unlawful conduct. *Commonwealth* v. *Caso,* 377 Mass. 236, 241 (1979), and cases cited. Here, although the Taylor statement was later suppressed, given the presence of all the above mentioned factors indicating Parham's willingness to confess and equivocal evidence concerning use of the Taylor statement, we cannot say that application of the exclusionary rule would have the slightest effect on deterring police misconduct. *Commonwealth* v. *Gallant,* 381 Mass. 465, 470-471 (1980).

5. *Ineffective assistance of counsel.* Parham asserts that his trial counsel's failure to perfect his appeal left him "completely abandoned," that such failure to file a timely appeal renders counsel's representation per se incompetent, and that exhibits were lost through the incompetence of trial counsel, thereby weakening Parham's ability to present an effective record for appellate review. We disagree. The record does not support Parham's assertion that trial counsel left him "completely abandoned" on appeal. Rather, the record indicates trial counsel's appellate strategy would focus on the "fruits of the poisonous tree" theory discussed above, inasmuch as counsel's letter dated March 2, 1978, to Parham states that since an appellate decision in favor of Taylor had been rendered, the time to move forward with Parham's appeal had arrived. It would have been desirable for counsel to inform Parham at an earlier date and with greater clarity concerning this strategy. We do not approve of counsel's failure to file a timely appeal but we cannot say that counsel's actions amount to "complete abandonment."

Parham's assertion of per se incompetence does not present the correct legal standard for review of effective assistance. Rather, that standard is whether counsel's conduct falls "measurably below that which might be expected from an ordinary fallible lawyer" and whether that conduct had caused prejudice by depriving defendant of an otherwise available, substantial ground of defense. *Commonwealth v. Saferian*, 366 Mass. 89, 96-99 (1974). Here, we cannot say that adopting a strategy of waiting to see what the outcome of Taylor's appeal would be falls measurably below an ordinary fallible lawyer's conduct, nor, inasmuch as we have reviewed the entire record at this time, did it cause defendant to lose any ground of defense. Further, failure to appeal on the voluntariness issue while awaiting a determination on Taylor's appeal cannot be the basis for complaint, because the adoption of a strategy which does not work "does not necessarily indicate error or ineffective assistance of counsel." *Commonwealth v. Brady*, 380 Mass. 44, 58 (1980) (Abrams, J., concurring).

6. *Error in jury instructions concerning application of the felony-murder rule.* Parham asserts error in the trial judge's failure to instruct the jury that a finding that Parham had knowledge that his coparticipants were in possession of a dangerous weapon was a prerequisite to application of the felony-murder rule.

Although the felony-murder rule has been much discussed since Parham's convictions (see *Commonwealth v. Currie*, 388 Mass. 776 [1983]; *Commonwealth v. Watson*, 388 Mass. 536 [1983]; *Commonwealth v. Moran*, 387 Mass. 644 [1982]; *Commonwealth v. Matchett*, 386 Mass. 492 [1982]; *Commonwealth v. Walker*, 17 Mass. App. Ct. 194 [1983]), these cases do not aid him. *Watson* comes closest to supporting the defendant's position because we held there that failure to instruct the jury that one participant in a robbery-murder must be shown to have had knowledge that the other participant had a weapon in order to convict the weaponless participant of murder under the felony-murder rule was error. *Commonwealth v. Watson, supra* at 544-546. In the

instant case, which was tried approximately seven and one-half years before our decision in *Watson,* the judge gave a full and accurate charge on the criminal liability of joint participants. There was evidence in the form of an admission that Parham knew that his companions in crime carried knives on this occasion. We perceive no valid reason for departing from our rule in *Moran* as to retroactive application. *Commonwealth* v. *Moran, supra* at 651 n.3. Accordingly, we limit the rule of *Watson,* described above, to those cases on direct appeal or as to which time for direct appeal had not expired at the time when *Watson* was decided if the issue was preserved at trial. This issue was not preserved at trial, and thus it is before us solely pursuant to § 33E. We conclude that the instructions on joint venture do not create a substantial risk of a miscarriage of justice.

7. *Review under G. L. c. 278, § 33E.* The entry of a verdict of a lesser degree of guilt pursuant to our power under G. L. c. 278, § 33E, is not required. We have made a careful review of the record and we are persuaded that the result reached at trial was consonant with justice.

*Judgments affirmed.*