COMMONWEALTH *vs.* JAMES LANOUE.

Suffolk. May 7, 1984. — July 30, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Voluntariness of statement, Instructions to jury, Capital case. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver.*

A judge was warranted in finding, on the basis of conflicting testimony before him, that a criminal defendant was not so intoxicated as to prevent his spontaneous inculpatory statement, made at the time of his arrest, from being the product of a rational intellect and a free will. [568-588]

A judge was warranted in concluding that a defendant's state of intoxication at the time of his interrogation by police did not prevent him from making a voluntary, knowing, and intelligent waiver of his Miranda rights. [588-589]

Police were entitled to rely on a suspect's outward behavior in determining whether to interrogate him, and were not obliged to administer a breathalyzer test or a field sobriety test before doing so. [589]

Where the nature of a murder victim's injuries demonstrated a conscious and fixed purpose to kill, continuing for a length of time, the issue of murder in the first degree, based on deliberately premeditated malice aforethought, was properly submitted to the jury. [589-590]

At a criminal trial, the judge's instructions to the jury on the issue of reasonable doubt presented no reversible error. [590-591]

On appeal from a conviction of murder in the first degree, this court, considering the sparseness of the evidence of premeditation, as well as possible deficiency in the judge's charge respecting the effect of intoxication on the defendant's capacity for premeditation, exercised its power under G. L. c. 278, § 33E, to reduce the verdict to one of guilty of murder in the second degree. [591-592]

INDICTMENT found and returned in the Superior Court Department on April 25, 1980.

A pretrial motion to suppress evidence was heard by *Ronan, J.,* and the case was tried before him.

*William P. Homans, Jr.,* for the defendant.

*Robin A. Pearl,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant, James Lanoue, was convicted of murder in the first degree and sentenced to life imprisonment. On appeal, the defendant claims the following errors: (1) the denial of his motion to suppress; (2) the denial of his motion for a required finding of not guilty on so much of the indictment as charges murder in the first degree; (3) the questioning of prospective jurors;[1] and (4) the trial judge's instructions to the jury on reasonable doubt. The defendant seasonably objected to both the judge's questioning of prospective jurors and his instructions on reasonable doubt. On the basis of these errors, the defendant requests a new trial. In the alternative, he requests that we exercise our power under G. L. c. 278, § 33E, to reduce the verdict to murder in the second degree. We find no reversible error at trial. However, we believe that this case presents an appropriate occasion to exercise our power under G. L. c. 278, § 33E, and we reduce the verdict to guilty of murder in the second degree.

We review briefly the evidence presented at trial. On the evening of February 14, 1980, Elizabeth Creamer, the victim, was murdered at 14 Temple Street in Boston. At approximately 9:30 P.M. on that evening, Ida Lanoue, the defendant's mother, walked to the police station and sought the aid of the Boston police department. She requested that they proceed to 14 Temple Street. Officers Albert Charbonnier and Patrick Russel accompanied Mrs. Lanoue there.

Upon their arrival, the police officers initially saw the defendant in the kitchen sweeping up debris from the floor. As the officers approached the defendant, they observed blood on his forearms and hands. Officer Charbonnier inquired whether anything was wrong, and the defendant stated that he had cut himself shaving.

From his position in the kitchen, Officer Charbonnier noticed blood in an adjacent bedroom. Upon investigation he found

---

[1] This issue, addressed as it is to questions about juror attitudes toward the death penalty, drops out of the case because of the reduction of the verdict to murder in the second degree.

large amounts of blood on the bed and the pillow. He also found blood on a piece of clothesline, on a hairdryer and its cord. After further investigation, Charbonnier noticed that the door leading to the courtyard was blocked by a heavy chest of drawers surrounded by broken glass and other debris. After removing the chest and opening the door, he saw a steamer trunk with a piece of cloth protruding from it. The victim's partially clothed body was found in the trunk.

Sergeant James Curran, who had arrived at the scene in response to a radio dispatch, placed the defendant under arrest. As the officer started to recite the Miranda warnings, the defendant blurted out, "Who gives a . . . . I'll only get twelve years, anyhow." The defendant was then taken to the police station and booked. He again received the Miranda warnings. Detective Sergeant James P. Chaisson thereafter proceeded to interrogate the defendant, but only after reciting the Miranda warnings a third time. The defendant indicated that he was willing to make a statement.

He related that in the early evening of February 14, he invited the victim to his apartment for a few drinks. He asked the victim to purchase some vodka at the liquor store. When she returned, they started drinking the vodka straight from the bottle. At some point the victim began to undress and said "no . . . money, no fun." After she said this, the defendant stated that he "passed out" or went "blank" and remembered nothing until he awoke and saw the victim lying bloodied in the corner of the room.

He stated he listened for her heart beat and found no pulse. He also said that it looked as though he had "beat[en] her . . . head in." The defendant then went to the basement to get a trunk. He tried to dress the victim, placed her in the trunk and put the trunk in the courtyard. At some point he remembered telling his mother that he thought he had hurt the victim and that he wanted his mother to get the car in order to dump the trunk somewhere. When the police arrived the defendant said that he tried to make up a story to conceal what had happened.

The medical examiner who conducted the autopsy testified that the victim died as a result of asphyxia due to ligature and

manual strangulation. Prior to her death the victim incurred numerous injuries. The external observations revealed bruises and cuts around her neck, on the left side of her face, and on her lips, right shoulder, spine, and right buttock. Her nose was broken also. The internal examination revealed bruises in the left frontal area and on the back of the head.

1. *The motion to suppress.* The defendant asserts two grounds of error in the denial of his motion to suppress: (1) that the Commonwealth failed to prove beyond a reasonable doubt the voluntariness of his spontaneous, inculpatory statement made at the time of his arrest; and (2) that the Commonwealth failed to prove by a preponderance of the evidence that his statement made during interrogation was the product of a voluntary, knowing, and intelligent waiver of his Miranda rights. The defendant bases each argument on the evidence which indicated that he was intoxicated at the time each statement was made.

a. The defendant first claims that the statement, "Who gives a . . . . I'll only get twelve years, anyhow," was inadmissible because it was not the product of a rational intellect. The defendant was tried prior to *Commonwealth* v. *Tavares,* 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982), which imposes on the Commonwealth the burden of proving beyond a reasonable doubt the voluntariness of a statement before such statement is placed before the jury. We have not extended this holding retroactively, and therefore it is inapplicable in this case. *Commonwealth* v. *Parham,* 390 Mass. 833, 838 n.3 (1984).

The present case involves the question whether the defendant was so intoxicated at the time he uttered the spontaneous, inculpatory statement as to preclude a finding that the statement was "the product of a rational intellect and a free will."[2] *Black-*

---

[2] Although the judge failed to make detailed subsidiary findings, we need not remand the case. While we have acknowledged the importance of subsidiary findings, *Commonwealth* v. *Garcia,* 379 Mass. 422, 428 (1980), the omission is not fatal here where the ultimate conclusion is clearly evident from the record. See *Commonwealth* v. *Parham, supra* at 837-838. The judge's denial of the defendant's motion implies resolution of factual issues in favor of the Commonwealth, although once again we urge trial judges to make written findings. See *Commonwealth* v. *Forrester,* 365 Mass. 37, 45 (1974).

*burn* v. *Alabama,* 361 U.S. 199, 208 (1960). See *Commonwealth* v. *Vick,* 381 Mass. 43, 45 (1980). In determining voluntariness, we must examine the totality of the circumstances. *Commonwealth* v. *Garcia,* 379 Mass. 422, 428 (1980). Intoxication is an important factor which bears on the issue of voluntariness. *Commonwealth* v. *Wampler,* 369 Mass. 121, 124 (1975). However, "[i]ntoxication alone is not sufficient to negate an otherwise voluntary act." *Commonwealth* v. *Doucette,* 391 Mass. 443, 448 (1984).

At the hearing on the motion to suppress, the evidence concerning the extent of the defendant's inebriation was conflicting. On one hand, the defendant's mother testified about the defendant's long history of alcohol abuse. She also described the defendant's periodic ingestion of prescription medication. In the early evening of February 14, she saw the defendant about to take a handful of pills which, she assumed, were pain killers. She testified that at various times that evening the defendant was perspiring heavily, mumbling incoherently, and unable to sit on her bed without falling to the floor. In her opinion, the defendant was under the influence of both alcohol and drugs.

The defendant testified that for some time he had been ingesting Darvon, Librium, Dalmane, Inderal, and Pro-Bathine approximately four times a day. He stated also that he consumed at least one pint of vodka daily. On February 14, he began drinking at 10:45 A.M. and consumed his regular heavy dosage of pills during the day. He gave a detailed account of his whereabouts that day until the time the victim uttered the provocative remark. At that point his memory failed.

On the other hand, Officer Charbonnier, who was first to arrive at the scene, stated that the defendant had no trouble standing, staying awake, or conversing with the officers. He did not observe the defendant's speech as being slurred or his eyes as being glassy. In his opinion, the defendant was sober. Sergeant James Curran and Officer Robert MacAleese, who went to 14 Temple Street in response to a radio dispatch, also testified that in their opinion the defendant was sober. An assistant district attorney who first saw the defendant in the

interrogation room at the police station on the night of the arrest noticed that the defendant's speech was slightly slurred, and admitted that the defendant appeared to have been drinking. Detective Sergeant James Chaisson, who also first saw the defendant at the police station, testified that the defendant looked as if "he had been drinking" and that his eyes were glassy. However, each stated that, in his opinion, the defendant was sober.

On the basis of this evidence, the judge denied the defendant's motion to suppress the spontaneous, inculpatory statement. This determination clearly lay in the judge's assessment of the witnesses' credibility. In the absence of subsidiary findings, we assume that the judge's determination of credibility was adverse to the losing party, the defendant. *Commonwealth v. Quigley,* 391 Mass. 461, 463 (1984). We shall not disturb this determination because the judge had the unique opportunity to observe and evaluate the witnesses and resolve the issue of credibility. See *Commonwealth v. Hooks,* 375 Mass. 284, 289 (1978).

b.   The defendant also argues that the statements made during the interrogation were not the product of a voluntary, knowing, and intelligent waiver of the defendant's Miranda rights.[3] The defendant further suggests that once the detective and the assistant district attorney noticed that the defendant looked as though he had been drinking, they were under an obligation to ensure a voluntary, knowing, and intelligent waiver.[4]

Although both the detective and the assistant district attorney believed that the defendant looked as though he had been drinking, they both concluded that the defendant was sober. As stated earlier, the issue as to the defendant's intoxication was

---

[3] The defendant does not argue that the statements were involuntary under *Jackson v. Denno,* 378 U.S. 368 (1964), and that a second voir dire hearing was necessary when the evidence of the statements was offered at trial. He concedes that it was unnecessary "[i]n view of the thoroughness of the hearing of the defendant's Motion to Suppress . . . ."

[4] The defendant suggests that the police should have administered a field sobriety test or a breathalyzer test to determine the extent of the defendant's intoxication.

one of credibility, which the judge resolved in favor of the Commonwealth. Therefore, we conclude that the judge did not err in denying the motion to suppress on this basis.

Furthermore, in examining the details of the interrogation, we find no circumstances warranting a contrary conclusion. The interrogation lasted approximately from one-half hour to forty-five minutes. Only three police officers were present. The record does not indicate that the defendant was threatened or coerced in any way. Also the defendant's ability to recall the events with specific detail, with the exception of the infliction of wounds, indicated that the defendant's mind was not overtaken by drugs and alcohol. See *Commonwealth* v. *Wilborne,* 382 Mass. 241, 251-252 (1981).

The defendant's suggestion that the police have an obligation to ensure a voluntary, knowing, and intelligent waiver through administration of a breathalyzer test or field sobriety test lacks merit. While police officers should be sensitive to a defendant's state of intoxication, *Commonwealth* v. *Hosey,* 368 Mass. 571, 577 (1975), they are ordinarily "entitled to rely on a suspect's outward behavior and assurances of sobriety" when deciding whether to proceed with an interrogation. *Commonwealth* v. *Parham, supra* at 839.

2. *Motion for a required finding of not guilty.* At the close of the Commonwealth's case and again at the close of all the evidence, defense counsel moved for a required finding of not guilty on so much of the indictment as charged murder in the first degree. The defendant claims error in the judge's denial of this motion because there was insufficient evidence of premeditation to warrant submission of the case to the jury. We view the evidence in the light most favorable to the Commonwealth when determining if a rational trier of fact, on the basis of proper inferences, could find the defendant guilty on each element of the crime charged beyond a reasonable doubt. *Commonwealth* v. *Latimore,* 378 Mass. 671, 767 (1979).[5] The inferences cannot be too remote but "allowable inferences need

---

[5] The case was submitted to the jury on deliberate premeditation (murder in the first degree), murder in the second degree, and manslaughter.

not be necessary or inescapable." *Commonwealth* v. *Rojas,* 388 Mass. 626, 630 (1983). We conclude that the evidence was "legally sufficient to permit submission of the case to the jury." *Commonwealth* v. *Latimore, supra.*

The defendant relies primarily on *Commonwealth* v. *McInerney,* 373 Mass. 136 (1977), to demonstrate a lack of evidence to support the inference of premeditation. Although the facts of this case closely parallel *Commonwealth* v. *McInerney, supra,* we believe the nature of the injuries inflicted in the present case provides a basis for distinguishing the two cases. Both factual scenarios indicate that the victims were strangled with an instrument within reach after uttering provocative statements to the defendants. In both cases, the Commonwealth did not introduce direct evidence establishing a preconceived plan to murder. However, in the case at hand, the victim was severely beaten prior to her actual strangulation.

The severe injuries inflicted on the victim may have demonstrated a "conscious and fixed purpose to kill continuing for a length of time and warranted a finding of murder with deliberately premeditated malice aforethought." *Commonwealth* v. *Satterfield,* 362 Mass. 78, 82 (1972), quoting *Commonwealth* v. *Bonomi,* 335 Mass. 327, 356 (1957). *Commonwealth* v. *Lamrini, ante* 427, 431 (1984). Furthermore, the medical examiner testified that death resulted from both manual and ligature strangulation. The jury could have inferred that the defendant resorted to ligature strangulation only after his futile attempts at manual strangulation. As long as there exists a period of time, however brief, between premeditation and the act, that is sufficient for submission of the issue of murder in the first degree to the jury. *Commonwealth* v. *Tucker,* 189 Mass. 457, 493-494 (1905). Moreover, because the evidence of intoxication was conflicting, the issue was properly submitted to the jury. See *Commonwealth* v. *Podlaski,* 377 Mass. 339, 346 (1979).

3. *Instructions on reasonable doubt.* At trial the judge instructed the jurors that "reasonable doubt is sometimes said to be a doubt for which a good reason can be given." He also defined "a reasonable juror" as one "earnestly seeking the truth

and not looking for a doubt." The defendant objected to these instructions at trial and claims that the judge's failure to clarify his remarks requires a new trial.

The propriety of the instructions must be determined from a consideration of the charge as a whole and not from a consideration of isolated portions. *Commonwealth* v. *Bjorkman,* 364 Mass. 297, 308 (1973). While the phrase, "doubt for which a good reason can be given," should not have been used, when viewed in the context of the entire charge, we find no reversible error. See *Commonwealth* v. *Robinson,* 382 Mass. 189, 198 (1981); *Bjorkman, supra* at 309. The judge defined reasonable doubt also in terms of a final and settled conviction of guilt as well as guilt to a moral certainty. He correctly instructed on the presumption of innocence and burden of proof. See *Commonwealth* v. *Thurber,* 383 Mass. 328, 333 (1981). In addition, although the judge strayed from the precise language of *Commonwealth* v. *Webster,* 5 Cush. 295, 319-320 (1850), when defining a reasonable doubt we have never required absolute conformity. *Commonwealth* v. *Beverly,* 389 Mass. 866, 870 (1983). When viewing the judge's language in light of the entire charge, on balance, we find that the definitions of reasonable doubt and a reasonable juror given to the jury were adequate.

4. *General Laws c. 278, § 33E.* The defendant in oral argument requested that we exercise our power pursuant to G. L. c. 278, § 33E, to reduce the verdict of murder in the first degree to murder in the second degree. Although we perceive no reversible error at trial, we are satisfied that, in the interest of justice, we should grant the defendant's request. This result is in accordance with our duty to consider the whole case broadly to determine whether there was any miscarriage of justice. *Commonwealth* v. *Williams,* 364 Mass. 145, 150 (1973). There are two bases for the reduction.

The circumstantial evidence of premeditation introduced at trial was thin. Although the evidence of multiple injuries sustained by the victim prior to death was sufficient to withstand a motion for a required finding of not guilty, we conclude that "it would be more consonant with justice to reduce the verdict

to murder in the second degree." *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 749 (1975). The judge's charge concerning the effect of intoxication on the defendant's capacity for deliberate premeditation was somewhat deficient in light of the substantial evidence of intoxication. The judge charged the jury that "drunkenness would be a fair [*sic*] to your finding . . . deliberate premeditation," if "the drunkenness of the defendant . . . was so extreme that it befuddled his mind and reasoning process." Although this charge may not constitute reversible error, we conclude that it may not have sufficiently conveyed to the jury the principle that "if a man is so overcome by liquor . . . he is incapable of deliberately premeditating." *Commonwealth* v. *Delle Chiaie,* 323 Mass. 615, 617 (1949).[6] For these reasons we remand the case to the Superior Court and order that the verdict be reduced to murder in the second degree.

*So ordered.*

---

[6] We suggest the following instruction from *Delle Chiaie, supra* at 617-618. "Voluntary intoxication is never an excuse or a palliation for crime. It would be subversive of all law and morality if the commission of one vice, may we call it a vice like drunkenness, or crime as it is under our statute here, should be allowed to excuse another crime. One may be perfectly unconscious of what he is doing and yet be responsible for his conduct during drunkenness. . . . Drunkenness is no excuse for killing another while engaged in the act of attempting to rape her. Drunkenness is no excuse for attempting to rape a girl and killing her in the act of that attempt. No matter how drunk one may be and no matter what the intention may be, the law does not permit drunkenness under such circumstances to be an excuse for the crime. . . . On the question of murder in the first degree deliberately premeditated, apart and distinct from murder committed during an attempt to rape, if you are satisfied upon the evidence that the defendant killed the deceased but that he was incapable of conceiving a deliberately premeditated intention to kill because of intoxication, then he is not guilty of murder in the first degree, but he is guilty of murder in the second degree. That is because deliberate premeditation is required there, and if a man is so overcome by liquor that he is incapable of deliberately premeditating, then the law says, out of kindness to him in that situation, that he is not guilty of murder in the first degree but he is guilty of murder in the second degree."