COMMONWEALTH vs. KEVIN DYKE.

Middlesex. November 7, 1984. — February 11, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Constitutional Law,* Admissions and confessions, Assistance of counsel. *Evidence,* Admissions and confessions. *Practice, Criminal,* Voluntariness of inculpatory statements, Retroactivity of judicial holding. *Homicide.*

At a criminal trial conducted before this court's decision in *Commonwealth v. Tavares,* 385 Mass. 140, 150, cert. denied, 457 U.S. 1137 (1982), extending the applicability of the Massachusetts "humane practice" to defendants' admissions as well as full confessions and requiring that voluntariness of such statements be proved beyond a reasonable doubt, the judge did not err in finding, by a preponderance of the evidence, that certain statements made by the defendant were voluntary, and thus were admissible. [35-38]

The defendant in a murder case was not denied effective assistance of counsel by his attorney's waiver of oral argument on the defendant's motion for a required finding of not guilty on so much of the indictment as charged murder, a motion which the judge denied, where the judge, acting under Mass. R. Crim. P. 25 (b) (2), later reduced the jury's verdict of guilty of murder in the second degree to guilty of manslaughter. [38-39]

A claim of ineffective assistance of counsel for the defendant in a murder case was not supported by counsel's concession, in the context of asking the judge to reduce the jury's verdict of guilty of murder in the second degree, that the evidence warranted a verdict of guilty of manslaughter. [39]

INDICTMENT found and returned in the Superior Court Department on August 31, 1981.

The case was tried before *Hiller B. Zobel, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Walter T. Healy (Frank G. Kelleher* with him) for the defendant.

*Joseph P. Musacchio,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. After a trial in the Superior Court in Middlesex County, a jury found the defendant, Kevin Dyke, guilty of murder in the second degree. On defense counsel's motion, the trial judge reduced the verdict to manslaughter, under the authority of Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979). The defendant appealed his conviction on two grounds. He first argued that the trial judge erred in finding, by a preponderance of the evidence rather than beyond a reasonable doubt, that certain statements made by Dyke were voluntary, and thus were admissible. The defendant also argued that he had been denied effective assistance of counsel at trial. The Appeals Court summarily affirmed Dyke's conviction. 17 Mass. App. Ct. 1113 (1984). We granted his application for further appellate review. For the reasons explained below, we now affirm.

We briefly summarize the evidence. The defendant had lived with the victim, Barbara Magro, and her two daughters for six months. On June 2, 1981, the defendant and Magro spent the evening at a restaurant and three clubs. The defendant testified that he drank fifteen servings of Scotch whiskey and his share of two carafes of wine throughout the evening. Magro also drank alcohol that evening, but the defendant did not know how much. Dyke and Magro returned home at about 2:15 A.M. Dyke testified that he took sixty or seventy Valium tablets[1] and lay down on the bed. He testified that Magro had been "yelling," but that they did not argue. The next thing he remembered was being in the Billerica house of correction a few days later.

Magro's sixteen year old daughter Tina testified that she was awakened in the middle of the night by the sound of Magro and Dyke arguing. She heard her mother gasping, and Dyke saying, "I'm sorry, Barbara. Barbara, I'm sorry." Tina then fell

---

[1] The defendant testified to the same effect at the hearing on the motion to suppress his statements to the police. The judge disbelieved the defendant's testimony as to the number of Valium tablets he had consumed, and found that the defendant had consumed a "lesser" quantity of Valium.

asleep again. A neighbor from the apartment directly below Magro's apartment testified that he and his wife were awakened by a loud crashing noise above their heads at about 2:30 A.M. He heard an argument between Barbara and a man whose voice he could not say he recognized. After half an hour, his wife telephoned upstairs. He could hear the telephone ringing, but it was not answered.

At 7:30 A.M. on June 3, 1981, Tina went into her mother's bedroom. She observed her mother and the defendant lying on the bed, with the defendant's legs over Magro. Magro had blood on the left side of her chest, her eyes were half-opened, and she looked pale. Tina telephoned a friend, who came to the house. The friend's sister was then called, and she came, checked Magro's pulse, and called the fire department rescue squad. Tina stood two feet from the defendant and yelled continuously for a minute. Dyke made no response. Eventually, he rose and walked to the bathroom. He walked "[l]ike somebody that's just woke up," "[j]ust lackadaisical," "banging into walls." Shortly thereafter, a fire department lieutenant arrived at Magro's apartment. He determined that Barbara Magro was dead. He observed a knife on the bed beside the victim, next to her buttocks. He also observed a knife wound in her left lateral chest.

Soon after police officers arrived, they read Dyke his Miranda rights and began questioning him. In response to questioning, Dyke admitted having had an argument with Magro. Later, Dyke admitted having gone to the kitchen to get the knife. He was then asked whether he had said, "I'm sorry, Barbara," before or after he had stabbed her. Dyke responded, "After." He was then asked, "Do you realize you have now admitted stabbing your girl friend, Barbara Magro?" He responded, "Yes." The police officers testified to the statements of the defendant. The statements were not tape recorded, nor were they reduced to writing.

The medical examiner, Dr. George Hori, testified that the victim had died from a massive hemorrhage due to a stab wound to her heart. He examined her body shortly after 9 A.M. on June 3, 1981, when he arrived at her apartment. He deter-

mined that she had died three to four hours earlier, at five or six o'clock in the morning. He also determined that she would have died within five to seven minutes of the stabbing. Further testimony by two State chemists indicated that the blood on the knife was type A, while Magro's blood was type O. This discrepancy was not explained, but the chemists described factors such as age and condition of the stain, storage conditions, and the possibility of the presence of other bodily secretions as affecting blood type.

1. *Standard of proof for voluntariness determination.* Prior to trial, the defendant moved to suppress his statements to the police. He claimed that the statements were obtained in violation of his rights under the Fifth and Sixth Amendments to the Constitution of the United States, and also that his statements were not voluntarily given. The judge denied the motion.

The defendant now argues that the judge used the incorrect standard in determining that the defendant's admissions to the police officers were made voluntarily and thus were admissible.[2] See *Jackson* v. *Denno,* 378 U.S 368, 377 (1964) (criminal defendant has due process right "to object to the use of [a] confession and to have a fair hearing and a reliable determination on the issue of voluntariness"), and *Commonwealth* v. *Harris,* 371 Mass. 462, 469 (1976) (when voluntariness is an issue, long standing "humane practice" in Massachusetts requires voir dire hearing by judge in absence of jury to determine voluntariness, a ruling that a confession is voluntary before it may be submitted to jury, and jury reconsideration of voluntariness issue if confession submitted). The judge concluded by a preponderance of the evidence that the defendant spoke vol-

---

[2] The defendant does not contest the validity of the judge's findings and rulings as to the issues under the Fifth and Sixth Amendments. See *Miranda* v. *Arizona,* 384 U.S. 436 (1966). Before us, he asserts only that the due process issue of voluntariness was not determined properly by the judge. We note that the defendant did not raise this issue before the trial judge; nor did he argue then, or now, that the judge improperly charged the jury on the admissibility of his statements under the "humane practice" rule. See *Commonwealth* v. *Harris,* 371 Mass. 462 (1976).

untarily.[3] The defendant argues that the judge should have decided this issue by requiring proof beyond a reasonable doubt that the defendant's admissions were voluntary. In the findings which the judge submitted to this court in response to our order, he stated, "I found that the Commonwealth had met its burden of proof by a preponderance of the evidence . . . . [T]he Commonwealth's proof did not persuade me beyond a reasonable doubt." Thus, if the defendant is correct and the proper standard is "beyond a reasonable doubt," his statements should not have been admitted, and he would be entitled to a new trial. However, we conclude that the judge employed the proper standard, a preponderance of the evidence, and that the defendant is not entitled to a new trial on this basis.

In *Commonwealth* v. *Tavares,* 385 Mass. 140, 150-152, cert. denied, 457 U.S. 1137 (1982), we indicated, for the first time, that the admissibility of a defendant's admissions under the "humane practice" rule is to be determined by the same standards applicable to the admissibility of a confession. We further stated that the Commonwealth must prove beyond a reasonable doubt the voluntariness of a criminal defendant's admissions or confessions before they may be admitted in evidence. Before our decision in *Tavares,* the Commonwealth was required to prove voluntariness only by a preponderance of the evidence. *Commonwealth* v. *Fournier,* 372 Mass. 346, 349 (1977). *Commonwealth* v. *Mahnke,* 368 Mass. 662, 680 (1975), cert. denied, 425 U.S. 959 (1976). While the Federal constitutional concern for due process requires only that a defendant's confession be proved voluntary by a preponderance of the evidence, *Lego* v. *Twomey,* 404 U.S. 477 (1972), *Tavares* established that Massachusetts' long-standing humane practice requires that both admissions and confessions be proved voluntary beyond a reasonable doubt. *Tavares, supra* at 152.

*Commonwealth* v. *Tavares, supra,* was decided January 29, 1982, just over a month after Dyke's trial was concluded on

---

[3] After oral argument, we entered an order remanding the case to the trial judge for written findings whether the Commonwealth had proved the voluntariness of the defendant's statements beyond a reasonable doubt.

December 23, 1981. The issue of voluntariness of Dyke's admissions was preserved at trial, and the time for filing a direct appeal had not expired at the time *Tavares* was decided. Thus, Dyke argues that *Tavares* should be applied retroactively to his case. See *Commonwealth* v. *Bellamy,* 391 Mass. 511, 515 (1984) ("Retroactive application of a rule of criminal law is indicated if (1) a case is on direct appeal or as to which time for direct appeal has not expired when the new rule is announced and (2) the issue was preserved at trial").

We have considered the retroactivity of *Tavares* in three recent decisions and have concluded in each that *Tavares* is not retroactive. *Commonwealth* v. *Lanoue,* 392 Mass. 583, 586 (1984). *Commonwealth* v. *Paszko,* 391 Mass. 164, 179-183 (1984). *Commonwealth* v. *Parham,* 390 Mass. 833, 838 n.3 (1984). As in the present case, the defendants in all three cases argued on direct appeal for the retroactivity of *Tavares,* although in *Parham* the defendant had received special leave to file a late claim of appeal. *Parham, supra* at 834. *Lanoue, supra* at 584. *Paszko, supra* at 165.

In *Lanoue* and *Parham* we answered the very question Dyke puts before us now. We held in both cases that the judge was not required to apply the stricter *Tavares* standard in determining whether the defendant's statements were voluntary in trials conducted before our decision in *Tavares. Lanoue, supra* at 586. *Parham, supra* at 838 n.3. In *Paszko, supra,* we held that a related aspect of our *Tavares* decision was not retroactive. We held that the extension of our humane practice from confessions to admissions in *Tavares* need not be made retroactive, and the judge need not have instructed the jury to find the defendant's admissions voluntary beyond a reasonable doubt.[4]

---

[4] In *Tavares,* we ruled that Massachusetts' "humane practice," whereby a trial judge must determine that a confession is voluntary before submitting it to the jury and must also instruct the jury to determine voluntariness if it is in issue, applies to admissions as well as confessions. *Tavares, supra* at 150. In addition, we stated that the judge must instruct the jury that the Commonwealth has the burden of proving voluntariness beyond a reasonable doubt. *Id.* at 152. In *Paszko, supra,* the defendant's trial had taken place before our decision in *Tavares.* The defendant in *Paszko* argued, nonetheless, that *Tavares* applied to his case and thus that the judge should

Dyke's argument for retroactivity is foreclosed by our decisions in *Lanoue, Paszko,* and *Parham.* The rule in *Tavares* that the judge must determine the voluntariness of a criminal defendant's statements beyond a reasonable doubt is not to be retroactively applied. It is prospective only. Cf. *Commonwealth* v. *Day,* 387 Mass. 915, 921 n. 10 (1983) (rule that Commonwealth must prove waiver of Miranda rights beyond a reasonable doubt held not retroactive). There was no error.

2. *Ineffective assistance of counsel.* Dyke also argues that he was denied effective assistance of counsel at trial. He argues two grounds. The first is that his trial counsel waived oral argument on his motion for a required finding of not guilty of murder. The second is that after the jury returned a verdict of guilty of murder in the second degree, trial counsel conceded that the evidence warranted a verdict of guilty on the manslaughter charge.

In examining a claim of ineffective assistance of counsel, we inquire whether counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). If the lawyer's conduct failed to meet this standard, we ask whether his or her conduct was "likely [to] deprive[ ] the defendant of an otherwise available, substantial ground of defence." *Id. Commonwealth* v. *Bryant,* 390 Mass. 729, 749-750 (1984).

In the present case we cannot say that either of counsel's complained-of actions rendered his assistance ineffective. With respect to counsel's waiver of oral argument on the motion for a required finding of not guilty, we note that counsel properly objected when the judge denied the motion, thereby preserving

---

have instructed the jury to find the defendant's admissions voluntary beyond a reasonable doubt. *Id.* at 179. Using the analytical framework developed in *Commonwealth* v. *Breese,* 389 Mass. 540 (1983), we determined that this aspect of *Tavares* should not be held retroactive. *Paszko, supra* at 179-183. In that analysis, the "initial, and often determinative, criterion" is whether the purpose of the new rule is to advance the truth-finding function of the trial. *Id.* at 180. Because admissions "must be supported by independent evidence of a defendant's guilt," the risk that a conviction will be obtained solely from an "involuntary" admission is minimized. *Id.* at 181.

the issue for appeal. Counsel on appeal does not argue now that the motion should not have been denied. In the circumstances of this case, trial counsel's decision to waive oral argument on this point did not render his services ineffective. The trial judge reduced the jury's verdict of guilty of murder in the second degree to guilty of manslaughter. Thus, assuming that oral argument would have given the motion some hope of success, and that the motion had been granted, the defendant still would not have gained anything. A required finding of not guilty on the murder charges would have left the defendant with a manslaughter charge. Given that the jury found Dyke guilty of murder in the second degree, it is reasonable to assume that they would have found him guilty of the lesser included offense of manslaughter if the case had been submitted to them on that theory alone.

Nor did trial counsel's concession that the evidence warranted a verdict of guilty on the manslaughter charge render his assistance ineffective. That this was an unusual case is reflected in the judge's decision to use his special power under Mass. R. Crim. P. 25 (b) (2) to reduce the verdict from guilty of murder in the second degree to guilty of manslaughter. Trial counsel conceded that the evidence warranted a manslaughter verdict in the context of asking the judge to reduce the verdict to manslaughter. Thus, counsel's tactic actually resulted in a gain for the defendant — conviction of a lesser offense. "Trial tactics which, from the vantage point of hindsight, can be seen to have failed do not amount to ineffective assistance unless 'manifestly unreasonable' when undertaken." *Commonwealth v. Sielicki,* 391 Mass. 377, 379 (1984), quoting *Commonwealth v. Levia,* 385 Mass. 345, 353 (1982). Hindsight does not reveal counsel's concession to have been manifestly unreasonable. On the contrary, it was both reasonable and successful.

*Judgment affirmed.*