COMMONWEALTH *vs*. MICHAEL P. CIFIZZARI. February 28, 1985. *Practice, Criminal,* Voluntariness of statements. *Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions.

In the early morning hours of February 26, 1981, the defendant confessed to officers at the Milford police station that he was one of two men who, a year and a half before, had murdered one Concetta Schiappa, a seventy-five year old resident of that town. The defendant's counsel later moved to suppress the confession on the ground that it was not voluntarily given. The defendant's appeal from his conviction of murder in the second degree is based primarily on the judge's denial of that motion.

The underlying principles are by now well established. For reasons of both reliability and fundamental fairness, a confession by a defendant to a police officer (as to others, see *Commonwealth* v. *Paszko,* 391 Mass. 164, 176-178 [1984]) is inadmissible in evidence against him if the confession is not the product of a rational intellect but is instead in substantial part the product of mental illness. *Blackburn* v. *Alabama,* 361 U.S. 199, 205-208 (1960). *Commonwealth* v. *Harris,* 371 Mass. 462, 468 (1976). *Eisen* v. *Picard,* 452 F.2d 860, 863-865 (1st Cir. 1971), cert. denied, 406 U.S. 950 (1972). While the defendant's mental condition must be considered in determining whether his confession is the product of a meaningful act of volition, *Commonwealth* v. *Johnston,* 373 Mass. 21, 24 (1977), the fact that he suffers from a severe psychotic condition is not in itself cause for suppression. *Commonwealth* v. *Vasquez,* 387 Mass. 96, 100 (1982). The suggestion of mental illness imposes on the judge an obligation to determine the voluntariness of the confession or admission, *Commonwealth* v. *Masskow,* 362 Mass. 662, 667 (1972); *Commonwealth* v. *Chung,* 378 Mass. 451, 457 (1979), and, for the matter to be admissible in evidence, the record

must show with "unmistakable clarity" that the confession or admission was voluntarily given despite the mental illness. *Commonwealth* v. *Brady,* 380 Mass. 44, 52 (1980). *Commonwealth* v. *Louraine,* 390 Mass. 28, 39 (1983). As to trials occurring after the decision in *Commonwealth* v. *Tavares,* 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982), *Commonwealth* v. *Dyke,* 394 Mass. 32, 36-38 (1985), the burden is on the Commonwealth to prove both voluntariness and knowing and intelligent waiver of Miranda rights beyond a reasonable doubt. *Commonwealth* v. *Day,* 387 Mass. 915, 920-921 (1983). *Commonwealth* v. *Lanoue,* 392 Mass. 583, 586 (1984). And while an appellate court must independently determine the correctness of the judge's application of constitutional principles to the facts as found, *Commonwealth* v. *Wilborne,* 382 Mass. 241, 251 (1981), it will accord great deference to a judge's determination of voluntariness "which is supported by evidence in the record and which is also based on an assessment of the witnesses before him." *Id.* at 252. See also *Jackson* v. *Denno,* 378 U.S. 368, 390-391 (1964); *Commonwealth* v. *White,* 374 Mass. 132, 137-138 (1977); aff'd, 439 U.S. 280 (1978), reh. denied, 439 U.S. 1136 (1979); *Commonwealth* v. *Santo,* 375 Mass. 299, 303 (1978).

The motion judge was fully cognizant of the burden borne by the Commonwealth and applied the heavy, beyond-a-reasonable-doubt standard. The Miranda warnings had been read to the defendant and, despite the defendant's assurance that he was familiar with them, were written out in the form of a statement for the defendant to sign. The defendant had come to the police station voluntarily, and he regarded Sergeant DiGirolomo (his former football coach from high school days) as a friend and a father figure. Although Sergeant DiGirolomo suggested talking about the murder,[1] the defendant readily acceded and stated that he had been intending to talk to DiGirolomo about it. When the defendant first admitted being in the victim's apartment the night of the murder and killing her, DiGirolomo interrupted and said to the defendant, "You know this is serious, don't you, Mike?" The defendant responded that he knew it was serious but that he wanted to get it off his chest. He went on to repeat his story several times, in greater detail each time, as taken down by other police officers. There was evidence that the defendant was clear-headed at the time and not under the influence of drugs (compare *Commonwealth* v. *Parham,* 390 Mass. 833, 838-839 [1984]; *Commonwealth* v. *Lanoue,* 392 Mass. at 587-588; contrast *Commonwealth* v. *Hosey,* 368 Mass. 571, 575-579 [1975]); that his answers to questions were responsive and his statements coherent (compare *Commonwealth* v. *Tavares,* 385 Mass. at 144; *Commonwealth* v. *Vasquez,* 387 Mass. at 99-100; *Commonwealth* v. *Lanoue,* 392 Mass. at 587); that he was not interrogated at undue length (indeed, he appears to have confessed as soon as the Miranda formalities were got through) (contrast *Blackburn* v.

---

[1] Possibly as a result of an incriminating remark made by the defendant to another police officer several weeks before.

*Alabama,* 361 U.S. at 204; *Commonwealth* v. *Daniels,* 366 Mass. 601, 607 [1975]); and there is not the slightest suggestion of actual coercion, pressure, or third-degree tactics employed by the police. Contrast *Commonwealth* v. *Harris,* 371 Mass. at 466-467.

To be sure, there was uncontested evidence that the defendant suffered from serious mental illness (chronic paranoid schizophrenia), and there were incidents of disturbed behavior (his false signature on the Miranda statement; his response to Officer Sullivan, Asst. Clerk Daley, and Dr. Robison) the night of the confession and the following morning. As to those the judge had the benefit of extensive psychiatric testimony tending both ways with respect to voluntariness. Contrast *Commonwealth* v. *Daniels,* 366 Mass. at 608 & n.6. The judge made extensive findings of fact and concluded, on abundant supporting evidence, that the Commonwealth had sustained its burden of proving that the defendant's confession was voluntary and was based on a knowing and intelligent waiver of Miranda rights. There was no error in his denial of the motion to suppress.

The other points raised are without merit.[2]

*Judgment affirmed.*

*Patricia A. O'Neill* for the defendant.

*Harry D. Quick, III,* Assistant District Attorney, for the Commonwealth.

---

[2](a) If there was any inaccuracy in the trial judge's interpretation of Dr. Pike's confusing answer, it did not preclude the defendant from pursuing the matter if he had wished. (b) We do not think that the jury could reasonably have interpreted Annette Pasqualone's casual statement to the defendant and his brother when they came to her house the day after the murder as an accusation calling for denial. Contrast *Commonwealth* v. *Trefethen,* 157 Mass. 180, 196-198 (1892); *Commonwealth* v. *Pleasant,* 366 Mass. 100, 102 (1974). Her testimony concerning their apparent puzzlement and her subsequent explanation to them that Concetta Schiappa had been murdered was in no way harmful to the defendant.