COMMONWEALTH *vs.* JOHN EDWARD SATTERFIELD.

Suffolk.    May 2, 1972. — June 5, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Homicide.*

Evidence in a murder case that the defendant was observed kicking the head of one lying in a street, that several times over a period of five to seven minutes the defendant left the victim momentarily and then returned to resume kicking him, and that the victim died as a result of the kicking warranted a finding that, within G. L. c. 265, § 1, the defendant acted with "extreme atrocity or cruelty" and was thereby guilty of murder in the first degree, irrespective of whether he was intoxicated [80–82]; and such evidence, together with evidence that the defendant was sober, also warranted a finding that within § 1 he was guilty of first degree murder by having acted "with deliberately premeditated malice aforethought" [82].

G. L. c. 265, § 1, is not unconstitutionally vague with respect to murder committed "with extreme atrocity or cruelty." [82–83]

INDICTMENT found and returned in the Superior Court on October 16, 1970.

The case was tried before *Leen,* J.

*Robert V. Greco (Reuben Goodman* with him) for the defendant.

*Thomas F. Reardon,* Assistant District Attorney *(Alvan Brody* with him) for the Commonwealth.

TAURO, C.J.    The defendant appeals under G. L. c. 278, §§ 33A–33G, from a conviction of murder in the first degree with a recommendation that the death sentence

not be imposed. The defendant urges the court, pursuant to its power under G. L. c. 278, § 33E, as amended, to reduce the charge to manslaughter or at most, murder in the second degree. He argues that G. L. c. 265, § 1, is so vague, indefinite and uncertain as to murder committed with extreme atrocity or cruelty, that it violates the due process clause of the Fourteenth Amendment to the United States Constitution.

The pertinent evidence is summarized. Officer Foley and his partner responded to a radio report at approximately 6:15 A.M. on August 19, 1970, that a man had been struck by a car in the vicinity of 615–617 Massachusetts Avenue, Boston. Officer Foley testified that at the scene the defendant approached him and told him that he had called the police and that the man had been struck by a car. Officer Foley stated that the defendant had "an odor of alcohol on his breath," but that in his opinion he was sober. Also at the scene, an eyewitness, Nick Cook, told Officer Foley that he had seen the defendant kicking the victim around his head. The defendant was taken into custody, at which time Cook stated, "That's the man that did it."

Cook testified that while he was walking on Massachusetts Avenue on his way to work, he heard a man calling for help. He continued walking and then stopped and looked across the street and saw a man "lying down in the street . . . and another man . . . kicking him." He crossed to the same side of the street and observed the defendant continue to kick the victim. He testified that it "[l]ooked like he was kicking him somewhere around his head, somewhere around his shoulders." He further testified that the defendant walked away momentarily and then on four or five occasions over a five to seven minute period returned and continued to kick the victim. The victim did not move during the episode. On one occasion, the defendant "got down on top [of the victim], and . . . came up with some keys." He then tried to open a nearby car with the keys and was unsuccessful; "he went back and . . . kicked the man a little bit more."

The only testimony as to how the altercation began came from the defendant. In essence his testimony was that he had been drinking all night visiting numerous bars including an "after hours joint" and that he left the "joint" at 6 A.M. intending to take public transportation home. As he walked along Massachusetts Avenue with his head down he "bumped into a guy." There was an argument, the victim pushed him down and kicked him twice on his left side. He then managed to throw the victim down and kicked him several times. He put his foot on the victim's head and pushed him away when the victim grabbed him by his pants leg. He then walked away but returned thinking he had injured the victim badly. He shook the victim but he did not move; he then saw Cook and the police.

Sergeant Marquardt, who was at the scene of the crime and at the booking, and Officer Brady, the booking officer, both testified that in their opinion the defendant was sober. He was able to answer the booking officer's questions and was able to make a telephone call from the station without any assistance.

The case was submitted to the jury with the judge's instructions encompassing murder in the first degree, murder in the second degree, manslaughter, assault and battery, and self-defence. There was sufficient evidence to sustain the verdict on either "[m]urder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty." G. L. c. 265, § 1.

To sustain a verdict of murder committed with extreme atrocity or cruelty, "the evidence must be of such a character as to show that the crime was committed under circumstances indicating something more than ordinary atrocity or cruelty." *Commonwealth* v. *Knowlton*, 265 Mass. 382, 388. *Commonwealth* v. *Connolly*, 356 Mass. 617, 628. "Repeated violent blows have been held to evince such ferocity as would warrant a finding of extreme atrocity or cruelty." *Commonwealth* v. *McGarty*, 323 Mass. 435, 440. "The final determination of whether extreme atrocity or cruelty exists, however, must be

decided by the jury, who, as the repository of the community's conscience, can best determine when the mode of inflicting death is so shocking as to amount to extreme atrocity or cruelty." *Commonwealth* v. *Connolly, supra,* at 628. See *Commonwealth* v. *Devlin,* 126 Mass. 253, 255. "It is not necessary, however, to show that such atrocity or cruelty was premeditated or that the defendant knew his conduct constituted extreme atrocity or cruelty." *Commonwealth* v. *Appleby,* 358 Mass. 407, 415. Whether or not the defendant was intoxicated therefore is not a relevant consideration. See *Commonwealth* v. *Gilbert,* 165 Mass. 45, 57–59; *Commonwealth* v. *Appleby, supra,* 416, n. 5.

The medical testimony showed that there were lacerations on the forehead, "over the eyelid to the left eye, and in front of the [left] ear." The lower left eyelid was swollen and reddish; there were abrasions on the left cheek, left ear lobe, chin and neck. The bones of the nose were crushed. The victim's lungs and windpipe were filled with blood and fluid, and the blood was coming from the crushed nose. This condition is called "aspiration of blood," which means "that the airways are filled with blood so no air can come through the windpipe . . . down to the bronchial tubes into the lungs." "The heart was slightly enlarged, but other than that, it was normal in every respect, and there were no abnormalities of the spleen or the liver, the kidneys, the gastrointestinal tract, except for the stomach, which was partially collapsed and also contained blood . . . . There was no evidence of fractures of the skull, and there was no hemorrhage, tumor or abscess, or any softening in the brain." The medical examiner's opinion was that the injuries were consistent "with kicking with a shoe" and that death was the "result of multiple blows to the head with fractures of nose and aspiration of blood."

The defendant contends that the physical injuries inflicted were not of the magnitude to warrant findings of extreme atrocity and cruelty. The extent of physical injuries is not, however, the sole governing test. "Our

cases have usually looked to the consciousness and degree of suffering of the victim, the disproportion between the means actually needed to inflict death and those employed, the instrumentalities employed and the extent of physical injury." *Commonwealth* v. *Connolly*, 356 Mass. 617, 628. The defendant kicked his victim to death over a period of five to seven minutes during which time the victim lay motionless and unable any longer to cry for help. The defendant returned on four or five separate occasions to continue his brutal attack on the victim. The evidence was sufficient to warrant the jury in finding that "the crime was committed with such savagery and brutality as to constitute murder committed with extreme atrocity and cruelty." *Commonwealth* v. *Feci*, 235 Mass. 562, 571. See *Commonwealth* v. *Devlin*, 126 Mass. 253, 255; *Commonwealth* v. *Devereaux*, 256 Mass. 387, 394; *Commonwealth* v. *Bartolini*, 299 Mass. 503, 516; *Commonwealth* v. *McGarty*, 323 Mass. 435, 440; *Commonwealth* v. *Connolly*, *supra*, at 628–629. Cf. *Commonwealth* v. *Vaughn*, 329 Mass. 333, 337.

In addition, "[t]he injuries inflicted on the deceased showed a conscious and fixed purpose to kill continuing for a length of time and warranted a finding of murder with deliberately premeditated malice aforethought." *Commonwealth* v. *Bonomi*, 335 Mass. 327, 356. See *Commonwealth* v. *Tucker*, 189 Mass. 457, 486–496; *Commonwealth* v. *Bartolini*, *supra*, at 515–516; *Commonwealth* v. *Brooks*, 308 Mass. 367, 369. There was conflicting evidence as to the extent of intoxication at the time of the killing; the defendant's testimony indicating that he was drunk, and the police officers testifying as to his sobriety. The jury could properly conclude that the defendant was sufficiently sober so that he was capable of forming a deliberately premeditated intention to kill. See *Commonwealth* v. *Rogers*, 351 Mass. 522, 532–533, cert. den. sub nom. *Rogers* v. *Massachusetts*, 389 U. S. 991; *Commonwealth* v. *Rollins*, 354 Mass. 630, 634–635.

This court has already decided "that G. L. c. 265, § 1, is not void for vagueness. The statutory language of

'extreme atrocity or cruelty' has been applied frequently and for many years. These words convey 'sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' *United States* v. *Petrillo*, 332 U. S. 1, 8." *Commonwealth* v. *Eisen*, 358 Mass. 740, 747.[1]

The defendant's claim as to a conflict between himself and counsel as affecting the outcome of the case is not persuasive.

We have reviewed the entire evidence and are of opinion that justice does not require a new trial or the entry of a verdict of a lesser degree of guilt. G. L. c. 278, § 33E.

*Judgment affirmed.*

---

[1] Habeas corpus was granted on other grounds. *Eisen* v. *Picard*, 452 F. 2d 860, 865 (1st Cir.).