COMMONWEALTH *vs.* LESLIE A. REDDICK.

Suffolk.    March 8, 1977. — April 29, 1977.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Homicide.    Practice, Criminal,* Directed verdict, Capital case.    *Evidence,* Contradiction of witness, On cross-examination.

At the trial of an indictment charging murder in the first degree, the evidence amply warranted a finding that the killing was intentional and inferences of deliberate premeditation and of extreme atrocity and cruelty. [462]

There was no error in an instruction to the jury at a murder trial that in the absence of deliberately premeditated malice aforethought, the defendant could be found guilty of murder in the first degree by reason of extreme atrocity or cruelty. [462]

At a murder trial, where a witness who had listened in on a telephone conversation between the defendant and the witness's wife on the morning of the murder testified that he did not hear what the defendant said and did not speak with the defendant, there was no error in allowing the prosecutor to read a typewritten statement made by the witness in response to questions at a police station as evidence of prior inconsistent statements. [462-463]

At a murder trial, the judge did not abuse his discretion in permitting the prosecutor to ask the defendant on cross-examination whether he had heard the medical examiner testify to stab wounds which the prosecutor described. [463-464]

INDICTMENT found and returned in the Superior Court on July 1, 1969.

The case was tried before *Rose,* J.

*Lois M. Lewis* for the defendant.

*Kathleen M. Curry,* Assistant District Attorney (*James M. Lynch* with her) for the Commonwealth.

BRAUCHER, J.    The defendant was convicted in June, 1970, of murder in the first degree, with a recommendation by the jury that the death sentence not be imposed. He appealed under G. L. c. 278, §§ 33A-33G, but the appeal was stayed pending disposition of a motion for a new trial. The motion was denied in September, 1975. We

affirm the conviction and decline to disturb the verdict under § 33E.

The Commonwealth produced evidence of the following facts, among others. Before April, 1969, the defendant had been living with Ernestine Mason, who had a child by him and was expecting another. She left him at the end of April because "he kept accusing me of men," and moved into the apartment of her sister, Dorothy Ricketts. The defendant telephoned her almost every day and asked her to come back, and occasionally visited the apartment. On the evening of May 12, 1969, he visited the apartment; present in addition to the defendant and Mason were her sister, her brother, four children, and the victim. The victim's brother had married another sister of Mason. The defendant and the victim talked as if they were arguing; the victim had a drink but the defendant did not. The victim left before the defendant.

Some time after 10 P.M. the same evening there were three telephone calls to the apartment. Mason's sister answered the first, recognized the defendant's voice, and told him she did not appreciate his accusing the victim "of going with my sister and insulting my company." The defendant then said the victim "is here and you can talk to him now," and she talked to the victim. During the second call Mason talked to the victim and then to the defendant; she told the defendant she was not coming back to him; she "didn't want him anymore." Mason's nephew answered the third call, heard a "noise like dishes breaking," and heard the defendant say to someone that "if Ernestine didn't talk that he would kill him." The nephew's mother then took the phone and heard the defendant say, "You black [expletive] — you black [expletive]." About 12:30 A.M. on May 13, the defendant called his niece, crying, and said, "God forgive me, because I just killed a man." He said he was at "Lillie's house" and had killed "Ernestine's brother," and he asked for money "to get out of town."

By agreement with Lillie Perryman the defendant cared for her apartment in her absence. The police went to that

apartment about 4:15 A.M. on May 13 and found the victim's body, stabbed eleven times. A bottle opener with a sharp fork and a serrated cutting edge entered one eye, ran through the upper nose, and exited through the other eye. Two knife blades, the handles broken off, were found in the chest; one of these was the cause of death. There were signs of a struggle. The victim was five feet five inches tall and weighed about 150 pounds; the defendant was about the same height and weighed about fifty pounds more. The defendant surrendered to the police on May 14.

1. *Motion for directed verdict.* At the close of the Commonwealth's case, the defendant moved for a directed verdict. G. L. c. 278, § 11. See *Commonwealth* v. *Baker,* 368 Mass. 58, 80 (1975); cf. *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975). He contends that there was no evidence of malice, premeditation or "extreme atrocity or cruelty." There was no error. The evidence, including the telephone statements of the defendant, amply warranted a finding that the killing was intentional. The eleven stab wounds warranted inferences both of deliberate premeditation and of extreme atrocity and cruelty. *Commonwealth* v. *Satterfield,* 362 Mass. 78, 82 (1972). Cf. *Commonwealth* v. *Connolly,* 356 Mass. 617, 628-629, cert. denied, 400 U.S. 843 (1970), and cases cited (extreme atrocity or cruelty).

2. *Jury instructions.* The jury were correctly instructed that, in the absence of deliberately premeditated malice aforethought, the defendant could be found guilty of murder in the first degree by reason of extreme atrocity or cruelty. *Commonwealth* v. *Appleby,* 358 Mass. 407, 415 (1970). Cf. *Commonwealth* v. *Lacy,* 371 Mass. 363, 367-368 (1976) (beating of eighty year old woman); *Commonwealth* v. *Satterfield,* 362 Mass. 78, 82 (1972) (victim kicked to death); *Commonwealth* v. *Eisen,* 358 Mass. 740, 746 (1971) (extensive head wound).

3. *Impeachment of prosecution witness.* The husband of the defendant's niece testified that he listened on an extension during the defendant's telephone call to her on the morning of the murder, but denied hearing what the defendant said. He was then shown a typewritten state-

ment to refresh his recollection. He first testified that he did not remember answering or hearing questions at the police station, but later admitted answering some of the questions on the statement. The judge cautioned the jury that the statement was admitted, "not as evidence of the fact itself, but merely to show that at some time this witness made a prior inconsistent statement." The prosecutor then read to the witness questions and answers from the statement, eliciting testimony that he did not remember them. He did, however, testify that he heard the defendant ask his niece if she had any money so the defendant could get out of town. The judge declared the witness hostile, and the prosecutor was allowed to cross-examine him.

A party who produces a witness may show that the witness has made prior statements inconsistent with his present testimony. G. L. c. 233, § 23. "Where a party is surprised by the testimony of his own witness that he does not remember relevant facts," however, "the party will not ordinarily be allowed to introduce prior statements of the witness concerning those facts, under G. L. (Ter. Ed.) c. 233, § 23, because the legitimate value of the statements as contradictions of the purported failure to remember would usually be slight, while the danger that the jury would give affirmative testimonial value to the statements would be great." See *Langan* v. *Pianowski*, 307 Mass. 149, 151 (1940), and cases cited. The defendant contends that the quoted principle was violated.

We disagree. The witness went beyond saying he did not remember. He said he did not hear what the defendant said and did not speak with the defendant that night. The Commonwealth was entitled to try to discredit that testimony, and was not barred by a series of answers of "I don't remember." *Commonwealth* v. *Festa*, 369 Mass. 419, 425-426 (1976).

4. *Cross-examination of the defendant.* The defendant was asked on cross-examination whether he had heard the medical examiner testify to stab wounds which the prosecutor described. The defendant complains that the questions were designed to emphasize the details and prejudice

the jury. We see no abuse of the judge's discretion. *Commonwealth* v. *D'Ambra,* 357 Mass. 260, 264 (1970).

5. *Section 33E.* In accordance with our duty under G. L. c. 278, § 33E, we have considered the case broadly on the law and the facts to determine whether there was any miscarriage of justice, and we conclude that the judgment should stand. We do not sit as a second jury to pass anew on the question of the defendant's guilt. *Commonwealth* v. *Earltop, ante,* 199, 204 (1977). The jury were not required to believe, and plainly did not believe, the defendant's testimony so far as it tended to show lack of malice, reasonable provocation, self-defense, sudden transport of passion and heat of blood. In a somewhat comparable case, we found that the weight of the evidence indicated murder in the second degree rather than murder in the first degree or manslaughter, since the entire sequence of events reflected spontaneity rather than premeditation. *Commonwealth* v. *Williams,* 364 Mass. 145, 150-152 (1973). In that case, as in this one, the jury had recommended that the sentence of death be not imposed. But the evidence of extreme atrocity and cruelty was far less compelling than it is here.

*Judgment affirmed.*