COMMONWEALTH *vs.* ROBERT E. GLASS, JR.

Suffolk.   December 7, 1987. — March 9, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Practice, Criminal,* Charge to jury, Argument by prosecutor, Instructions to jury, Capital case, New trial. *Self-Defense. Malice. Intent. Insanity. Intoxication.*

Evidence at a murder trial, including testimony by the defendant on cross-examination that, while the victim was standing on the steps of his residence, the defendant, using recently acquired Marine Corps boot camp training, attacked the victim, making a turning, double thrust motion with a knife, "because the turning motion creates more injury," disclosed no error in the submission to the jury of the issue of murder in the first degree committed with extreme atrocity or cruelty. [802-803]

This court had no occasion to decide the question whether the concept of murder in the first degree under G. L. c. 265, § 1, based on extreme atrocity or cruelty is unconstitutional due to impermissible vagueness concerning the nature of the crime where, in the circumstances of a murder case, the separately returned verdict of guilty of murder in the first degree on the theory of deliberate premeditation would have been substantially unaffected by any error in submitting the issue of extreme atrocity or cruelty to the jury. [803-804]

Further discussion of a claim of unconstitutional vagueness with respect to the concept of murder in the first degree under G. L. c. 265, § 1, based on extreme atrocity or cruelty. [804-805]

At a murder trial, the defendant was not prejudiced by alleged improprieties in the prosecutor's closing argument. [805-807]

At a trial in which the defendant was convicted of first degree murder in the death of one victim and, as to three surviving victims, of assault with intent to murder while armed and assault and battery by means of a dangerous weapon, the judge's instructions to the jury on self-defense and provocation, which the defendant challenged as implying that such defenses arise only as to victims who actually, personally assaulted the defendant, presented no occasion for relief as to the murder conviction under the power granted this court by G. L. c. 278, § 33E, nor a substantial risk of a miscarriage of justice with regard to the other convictions. [807-809]

At the trial of a capital case, certain errors in the judge's instructions to the jury that voluntary intoxication could not "reduce" murder in the second degree to manslaughter and that "voluntary intoxication has no bearing on the issue of assault with intent to kill being armed," presented no occasion for relief under the power granted this court by G. L. c. 278, § 33E, or otherwise, in view of the jury's other findings made after they received proper instructions as to voluntary intoxication. [809-810]

A judge did not err in denying a criminal defendant's motion for a new trial alleging that newly discovered evidence showed a substantial probability that the defendant suffered from pathological intoxication from alcohol at the time of the crime, where the judge in her discretion could properly have concluded that, if the evidence had been presented to the jury, there was no substantial likelihood that they would have reached a different result. [810-811]

INDICTMENTS found and returned in the Superior Court Department on September 23, 1983.

The cases were tried before *Sandra L. Hamlin,* J., and a motion for a new trial was heard by her.

*Myles Jacobson* (*John M. Thompson* with him) for the defendant.

*Margaret Steen Melville,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. Shortly after midnight on July 24, 1983, the defendant, a United States Marine who had just completed basic training, stabbed four recent immigrants from Vietnam in front of or in their three-decker house at 35 Coleman Street in the Dorchester section of Boston. This much is not in serious dispute before us. The defendant was tried and convicted of murder in the first degree of the one victim who died. As to the surviving victims, he was convicted on three indictments charging assault with intent to murder while armed and on three indictments charging assault and battery by means of a dangerous weapon.

The contest at trial concerned the circumstances under which the defendant stabbed the victims. The defendant testified that he was threatened by four men acting together and argued that he acted reasonably in self-defense. The Commonwealth's evidence tended to show that the defendant could have easily fled

the scene after one of the men had pushed him off the front steps of the house. Instead the defendant drew a knife and successively stabbed the four men, chasing the last two into their house in order to do so.

Represented by new counsel on appeal, the defendant argues that (1) the judge should not have submitted the case to the jury on the theory of murder in the first degree by reason of extreme atrocity or cruelty,[1] (2) the prosecutor's closing argument was prejudicially improper, (3) the jury instructions on self-defense and provocation were defective, (4) the judge improperly denied his motion for a new trial, and (5) he is entitled to relief under G. L. c. 278, § 33E (1986 ed.). We affirm the convictions.

Before we discuss the issues, we set forth in fuller detail evidence that the jury could have believed. On the evening of July 23, 1983, some residents of 35 Coleman Street, all of whom were immigrants from Vietnam, gave a birthday party for a friend and invited young people from the neighborhood. They offered beer and marihuana to their guests. The defendant attended the party. Later that night, hours after the party ended, residents of the house were awakened by yelling and other noise outside the house. One of them, Cuong Chi Huynh (Cuong), opened the front door and saw two men, one of whom was the defendant. The defendant was bending the fence in front of the house and yelling at Cuong. Cuong could not understand him and awakened Loi Phouc Chau (Loi) who spoke English. Loi went outside. Another resident, Anh Van Mai (Anh Mai), who was shortly to be stabbed fatally, also went outside. Hung A. Sum (Hung) came downstairs to the first floor where he saw Cuong and Anh Mai on the stairs in front of the house. Loi told the defendant to go home. The defendant continued breaking the fence. Loi and the defendant swore at each other, and the defendant was beginning to walk up the steps when Loi pushed him. The defendant fell backward off the steps, reached into a pocket, and pulled out a knife. He

---

[1] The jury also returned a verdict of guilty of murder in the first degree on the theory of deliberate premeditation. The defendant does not argue that the case should not have gone to the jury on this theory.

attacked Loi and stabbed him under this left armpit. Loi ran away (only to return to be stabbed again in the house). The defendant then attacked Anh Mai, who had stayed on the front steps eating noodles. Anh Mai also ran away. He came back about one-half hour later and was taken to a hospital where he died. The defendant, continuing his attack, pushed his way inside the house, stabbed Hung several times, and then chased and stabbed another resident, Tao Dinh.

After some effort, two friends of the defendant were able to get him out of the house. Boston police officers arrested the defendant at his home shortly after 2 A.M.

The defendant testified that, when he bent the railing at 35 Coleman Street, four men came out of the house. One pushed him. Another jumped into the air and kicked him. The others attacked, kicking and punching. One tried to stab him with a knife, but he was able to get possession of the knife. He was knocked on his back and stabbed a man who was straddling him whom he thought was the one who later died. He then charged up the stairs pursuing a man who had kicked at him. He was attacked and fought in the house.

The defendant said he drank three beers that night. There was testimony that the defendant was not intoxicated at any time that night.

1. The defendant argues that the evidence did not warrant submitting the case to the jury on the charge of murder in the first degree based on extreme atrocity or cruelty. Because the evidence warranted submission of the case to the jury on deliberately premeditated murder, the defendant's generally expressed motion for a required finding of not guilty was properly denied. See *Commonwealth* v. *Podlaski,* 377 Mass. 339, 344 (1979). The defendant did object, however, to the giving of any charge on extreme atrocity or cruelty. The issue was thus preserved for our consideration.

We review the evidence and conclude that there was a case for the jury on the theory of extreme atrocity or cruelty. See *Commonwealth* v. *Podlaski, supra,* at 344-345.[2] Our cases have

---

[2] Even if the evidence had not warranted submission of the case to the jury on this theory, the error would not necessarily require a new trial. The

generally upheld submission of the question of extreme atrocity or cruelty to the jury on the basis of even a single fatal blow. See *Commonwealth* v. *Golston,* 373 Mass. 249, 260 (1977), cert. denied, 434 U.S. 1039 (1978), and cases cited; *Commonwealth* v. *Eisen,* 358 Mass. 740, 746 (1971). But see *Commonwealth* v. *Brown,* 386 Mass. 17, 28 n.11 (1982) (single shot to the head and no other signs of injury; judge properly told the jury they could not find the defendant guilty of murder committed with extreme atrocity or cruelty). The jury could have found that, when attacked, the deceased victim was standing on the upper part of the front steps of his residence, eating noodles from a bowl with a spoon. The defendant testified on cross-examination that, using his recently acquired Marine Corps boot camp training, he made a turning, double thrust motion with the knife against the deceased victim (and the others), "because the turning motion creates more injury."[3] The fatal wound on the deceased victim (there were two other wounds) was five inches deep, the full length of the blade. The victim died about seven hours after he was stabbed.

The defendant seeks to make a more sweeping attack on the submission of the question of extreme atrocity or cruelty to the jury. He argues that extreme atrocity or cruelty as a basis for conviction of murder in the first degree (see G. L. c. 265, § 1) is unconstitutional because the elements of the crime are impermissibly vague in a due process sense. This argument is raised here for the first time, and we need not consider it except under G. L. c. 278, § 33E.

---

adequacy of the evidence on the theory of premeditation would sustain the conviction, where the jury returned a guilty verdict on each theory, unless the premeditation verdict was so tainted by the error that it created a substantial likelihood of a miscarriage of justice.

[3] On the question of the propriety of giving an instruction on extreme atrocity or cruelty, the defendant's statement was relevant. That statement was not, of course, part of the Commonwealth's case and thus could not have been considered at the time the defendant's motion for a required finding of not guilty was first presented. However, for the purpose of a § 33E review, involving the question of a miscarriage of justice in denying the motion for a required finding, we properly look at all the evidence.

The defendant states that no Massachusetts appellate case has ever held that it was error to submit the question of extreme atrocity or cruelty to a jury. But cf. *Commonwealth* v. *Brown, supra*. He points out that our opinions have discussed various factors that a jury may appropriately consider, argues that the standard is not explicit, and notes the uncertainty in a situation where "in the final analysis the issue must be left largely to the deliberation of the jury 'who, as the repository of the community's conscience, can best determine when the mode of inflicting death is so shocking as to amount to extreme atrocity or cruelty.'" *Commonwealth* v. *Lacy*, 371 Mass. 363, 367-368 (1976), quoting *Commonwealth* v. *Connolly*, 356 Mass. 617, 628, cert. denied, 400 U.S. 843 (1970).

The error in submitting extreme atrocity or cruelty to the jury, if it was one, did not create a substantial likelihood of a miscarriage of justice. The separately returned verdict of guilty of murder in the first degree on the theory of deliberate premeditation would have been substantially unsullied by any such error. Most of the prosecutor's arguments to the jury concerning the defendant's conduct and his apparent state of mind were appropriate not only to the Commonwealth's extreme atrocity or cruelty claim but also in the main to the intent and malice aspects of the three charges of armed assault with intent to murder. Thus these arguments largely would have been made even if the theory of extreme atrocity or cruelty had been taken away from the jury.

Therefore, we need not, and do not, decide the question whether the concept of murder in the first degree in this Commonwealth based on extreme atrocity or cruelty is unconstitutional due to an intolerable vagueness concerning the nature of the crime.

In order that the issue not be left totally in the air, however, we add these comments. The defendant acknowledges that, in *Commonwealth* v. *Eisen*, 358 Mass. 740, 747 (1971), this court held that the words "extreme atrocity or cruelty" in G. L. c. 265, § 1 (1986 ed.), had been applied frequently and for many years and gave definite warning of the nature of the crime. The court thus rejected the defendant's void for vague-

ness claim. See *Commonwealth* v. *Satterfield,* 362 Mass. 78, 82-83 (1972); *Palakiko* v. *Harper,* 209 F.2d 75, 100-102 (9th Cir. 1953) (Hawaiian statute adopted from predecessor of G. L. c. 265, § 1, not void for uncertainty). The defendant argues, however, that, even if our definition of extreme atrocity or cruelty provides satisfactory warning to potential defendants, it fails to satisfy the second aspect of the void for vagueness principle — the need to avoid arbitrary and discriminatory enforcement of the law by having explicit standards to guide police officers, prosecutors, judges, and juries. See *Grayned* v. *Rockford,* 408 U.S. 104, 108-109 (1972).

Without pausing to consider whether the statutory definition could satisfy the need for specificity in one respect but not in the other, we note that a conviction of murder in the first degree founded on extreme atrocity or cruelty requires proof beyond a reasonable doubt that there was an unlawful killing with malice aforethought (in other words, proof of murder in the second degree). See *Commonwealth* v. *Cunneen,* 389 Mass. 216, 227 (1983). A determination that the murder was committed with extreme atrocity or cruelty, and thus was a murder in the first, rather than in the second, degree, is significant only in the sentencing consequences to the defendant. A person convicted of murder in the first degree and sentenced to life imprisonment, unlike one convicted of murder in the second degree and similarly sentenced, is not eligible for parole. G. L. c. 265, § 2 (1986 ed.). We question whether it is constitutionally improper to permit a jury, in effect, to decide an aspect of a murderer's sentence by determining the degree of atrocity or cruelty in the murderer's conduct, at least where the possibility of a sentence of death is not at issue.

2. The defendant broadly attacks the prosecutor's closing argument, claiming prejudice because the prosecutor argued facts not in evidence, vouched for the credibility of certain witnesses, and sought unfairly to influence the jury. None of these objections was raised at trial. Most of them lack merit.[4]

---

[4] It was, for example, not improper for the prosecutor to comment on the defendant's demeanor (playing up to the jury) and the fact that he wore his

In a few respects the prosecutor overstated his case, but not to the degree that a new trial is required.[5] The jury were well aware that the prosecutor was arguing his view, and they had the capacity to discount hyperbole. This was a hotly contested trial at which the two sides presented sharply different explanations of the circumstances leading to the stabbings. The prospects were great, as the jury knew, that each side would look with disfavor on the factual conclusions urged by the other.

The claim that the prosecutor improperly offered his personal belief in the defendant's guilt and in the truthfulness of the Commonwealth's witnesses is not supported by the record. (a) In telling the jury that one of his witnesses told the truth, unlike the defendant and another defense witness, the prosecutor was arguing credibility, and there was no fair inference that the prosecutor knew something the jury did not. (b) The prosecutor cryptically stated that he had not called a particular witness who testified for the defendant because "I called the witnesses that I've indicated thus far to you to support their credibility." It is inherent in our system that the prosecution selects which witnesses to call, and, in the normal course, will argue that its witnesses are credible and that defense witnesses are not. The prosecutor was stating the obvious. (c) The statement that, if the jury were to consider the defendant not guilty, "then I

---

military uniform throughout the trial.

The evidence warranted the inference, and hence the prosecutor's argument, that the victims did not have fighting skills.

There was evidence that, in a sense at least, the deceased victim had spent his last dollar on a hungry young woman. The prosecutor's argument was rather beside the point and overblown.

We see no error in the argument that, based on the depth of the fatal wound, the jury could infer an intent to kill and could conclude that the murder was committed with extreme atrocity or cruelty.

The prosecutor was also warranted on the evidence in arguing the inference that the victims and their household members had invited young people from the neighborhood to their party to appease them in the hope that the young people would not steal or damage their motor vehicles.

[5] The argument that the defendant's acts were "Mansonesque" was not correct in a literal sense, but evidence that four men were stabbed in front of or in their home in a matter of minutes makes the reference close to accurate. The prosecutor's claim, however, that the defendant's acts were "cannibalistic" was a patently absurd misstatement, as the jury could readily perceive. The Commonwealth's brief does not try to defend this excess.

haven't done my job," does not express a personal belief in the defendant's guilt. It does express an opinion, not necessarily true, that any deficiencies in the prosecutor's case were his fault. The statement should not have been made. It suggests to the jury that they would be negatively criticizing the prosecutor's work if they were to return verdicts of not guilty. The overstatement, however, was not prejudicial in the circumstances of the entire case, the closing arguments, and the judge's charge. The jury knew the issue was the defendant's guilt and not the prosecutor's professional competence.

We next consider the defendant's claim that the prosecutor hoped to create jury sympathy for the victims and antipathy toward the defendant by exploiting the racial differences between the defendant and the victims. It was inevitable that during the trial there would be reference to "the Vietnamese" and to "the Americans." The prosecutor overstepped his bounds in declaring that the defendant referred "throughout his entire testimony to Asian stereotypes" traveling in gangs with knives and all being Kung Fu masters. As a literal statement concerning the defendant's testimony it was obviously wrong, as the jury knew. As an attack on the defendant's self-defense contention, expressed as hyperbolic ridicule, the argument was arguably tolerable. In the mix of things, any error could not have been prejudicial.[6]

3. The defendant challenges the jury instructions because, in his view, they implied that the "self-defense and provocation defenses arise only as to victims who actually, personally assaulted the defendant." The defendant made no objection at trial to the judge's charge on this ground. We need consider the challenge only to decide whether, as to the murder conviction, any error presents a substantial likelihood of a miscarriage of justice (*Commonwealth* v. *Lennon,* 399 Mass. 443, 448 n.6 [1987]), and whether, as to the other convictions, any error presents a substantial risk of a miscarriage of justice (*Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 [1967]).

---

[6] In light of our conclusions concerning the defendant's challenges to the prosecutor's closing argument, it is apparent that just because counsel did not object to any part of the prosecutor's closing argument, the defendant was not, as he argues, denied the effective assistance of counsel.

Self-defense is raised when there has been an overt act against the defendant constituting an assault or threat (*Commonwealth* v. *Doucette,* 391 Mass. 443, 453-454 [1984]; *Commonwealth* v. *Shaffer,* 367 Mass. 508, 514-515 [1975]), sufficient to place the defendant in actual and reasonable apprehension of grievous bodily harm or death (*Commonwealth* v. *Kendrick,* 351 Mass. 203, 211 [1966]). There must also be evidence that the defendant took all proper means to avoid physical combat before using deadly force. See *Commonwealth* v. *Epsom,* 399 Mass. 254, 258 (1987).

This court has not previously had to decide whether, when there is more than one victim, self-defense may be raised only as to a victim who assaulted or threatened the defendant. The judge instructed the jury that they should examine the circumstances as to each victim to determine whether that victim committed an overt act warranting the defendant's attack. The defendant argues that, in the circumstances, no particular victim need actually to have committed an overt act.

The judge was correct in instructing the jury to consider self-defense victim by victim. The defendant is correct, however, in arguing that a reasonable but mistaken belief that he was entitled to use force in his defense could raise the issue of self-defense. See W.R. LaFave & A.W. Scott, Jr., Substantive Criminal Law § 5.7 (c), at 654 (1986). In certain circumstances, a defendant might have a reasonable but erroneous belief that a victim had assaulted or threatened him. Such a defendant would be entitled to a self-defense instruction (assuming all other self-defense conditions were open on the evidence).

It is not at all apparent that the evidence raised a jury question as to whether, at a time when all other self-defense circumstances existed, the defendant attacked any victim with a reasonable but mistaken belief that the victim had threatened him. The jury could have believed the defendant when he testified that four men collectively threatened him and he reacted in self-defense, or the jury could have believed that the defendant successively attacked four men, three of whom never threatened him in any way. A factual middle ground con-

cerning the defendant's state of mind was not obvious, but one was not foreclosed by the evidence. In any event, the judge told the jury on the question of self-defense that they should consider whether the defendant was about to be physically attacked or reasonably believed that he was about to be physically attacked. That instruction, repeated in substance more than once, covered the concept of a mistaken but reasonable belief.[7]

The charge was not defective as argued, and certainly the defendant has not identified in the charge any risk of a substantial miscarriage of justice.

We note certain errors in jury instructions which the defendant neither challenged at trial nor challenges on appeal. We discuss them in fulfilling our function under G. L. c. 278, § 33E. These errors are not significant for our present purposes because they do not raise a substantial (or any other) likelihood or risk of a miscarriage of justice.

The judge properly told the jury that they could consider evidence of voluntary intoxication in deciding the questions of deliberate premeditation (*Commonwealth* v. *Costa,* 360 Mass. 177, 185-186 [1971]) and extreme atrocity or cruelty (*Commonwealth* v. *Perry,* 385 Mass. 639, 648-649 [1982]). The judge erroneously added, however, that voluntary intoxication could not "reduce" murder in the second degree to manslaughter. In *Commonwealth* v. *Grey,* 399 Mass. 469, 470-471 (1987), we discussed the significance of a defendant's mental impairment on the proof of malice. We added that voluntary ingestion of drugs, including alcohol, could properly bear on a defendant's capacity to have a specific intent to do something.

---

[7] On the parallel issue of provocation sufficient to reduce an intentional killing to manslaughter, the judge instructed the jury similarly. She said that any provocation must be such as "would likely produce in an ordinary, reasonable person that state of passion, anger, fear, fright or excitement as might interfere with his capacity for reflection or restraint" and did so. The defendant did not try this case on the theory that he mistakenly but reasonably believed he was provoked by the deceased victim. More importantly, the evidence does not readily raise the possibility. In any event, the judge's charge was sufficient on the question of reasonable provocation to obviate any substantial likelihood of a miscarriage of justice.

See *id*. at 471; *Commonwealth* v. *Henson,* 394 Mass. 584, 593 (1985). A jury should not, therefore, be foreclosed from considering the effects of the voluntary consumption of alcohol on the proof of any crime which requires proof of a defendant's specific intent. The judge should not have taken from the jury the question of the effects of voluntary intoxication on the elements of malice which involve a specific intent. *Commonwealth* v. *Grey, supra* at 470 & n.1.

On the charges of assault with intent to murder, the judge instructed the jury that they could consider evidence of the defendant's intoxication in deciding whether the Commonwealth had proved beyond a reasonable doubt a specific intent to kill with malice. This charge was consistent with views expressed in *Commonwealth* v. *Henson, supra,* which was released eleven days before this case went to the jury. However, in spite of our statement in the *Henson* opinion that a jury could consider evidence of a defendant's intoxication whenever proof of a crime requires proof of a specific criminal intent (*id*. at 593), the judge erroneously instructed the jury that "voluntary intoxication has no bearing on the issue of assault with intent to kill being armed."

Neither of these errors was the subject of an objection. Neither was so significant that the jury's verdicts could possibly have been influenced by them. The jury found deliberate premeditation after receiving a proper instruction on their treatment of evidence of voluntary intoxication. The jury also found an intent to kill with malice as to each of the three surviving victims, following an appropriate instruction concerning voluntary intoxication. If the jury had returned verdicts of murder in the second degree or of assault with intent to kill (rather than to murder), or both, these errors would have been of significance, possibly requiring a new trial.

4. The judge did not err in denying the defendant's motion for a new trial. That motion asserted a claim that newly discovered evidence showed a substantial probability that the defendant suffered from pathological intoxication from alcohol at the time of the attacks. The motion incorporated an affidavit of a psychiatrist who had examined the defendant after trial. He

stated that, "[a]lthough [the defendant] does not entirely fit the classic example of pathological intoxication, the facts of this case are consistent with the main symptom of the condition." Trial counsel had obtained an opinion of an expert on the question of the defendant's criminal responsibility prior to trial. That opinion was that the defendant was criminally responsible. There is no claim, or a reasonable basis for a claim, that trial counsel was ineffective, in a constitutional sense, in his handling of the possibility of an insanity defense.

The evidence was not newly discovered. The defendant has not shown that he could not reasonably have obtained the evidence before trial. See *Commonwealth* v. *Grace,* 397 Mass. 303, 306 (1986); *Commonwealth* v. *Kelley,* 370 Mass. 147, 152 (1976). The judge in her discretion could properly have concluded that, if the evidence had been presented to the jury, there was no substantial likelihood that they would have reached a different result. See *Commonwealth* v. *Grace, supra* at 305-307; *Commonwealth* v. *Devereaux,* 257 Mass. 391, 397 (1926). The definition of pathological intoxication given in the doctor's posttrial affidavit states that a person suffering from such a disorder has complete amnesia as to the episode. That element is inconsistent with the defendant's detailed testimony of the circumstances of the stabbings.

5. We have already considered certain matters pursuant to our duty under G. L. c. 278, § 33E. There is nothing else about the defendant's conduct or the course of his trial which prompts us to take any action in his favor under G. L. c. 278, § 33E, as to his conviction of murder in the first degree.

*Judgments affirmed.*