NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-955

COMMONWEALTH

vs.

STEVEN FAIRBAIRN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of assault and battery on a family or household member in violation of G. L. c. 265, § 13M (a), and destruction of property not exceeding $1,200 in violation of G. L. c. 266, § 127.[1] On appeal, the defendant claims that (1) the judge abused his discretion by denying the defendant's motion for a mistrial, and (2) errors in the judge's jury instructions on assault and battery and self-defense caused a substantial risk of a miscarriage of justice. We affirm.

Background. We summarize the relevant evidence the jury could have found, viewing it in the light most favorable to the

---

[1] The defendant was acquitted of a third charge.

Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  The victim and the defendant, her boyfriend of two years, went to a bar one evening for a drink and to "play[] a game of Keno" and then continued to a restaurant, where they each had a drink.  Approximately thirty minutes after arriving at the restaurant, the defendant left, taking the victim's vehicle.  The defendant returned approximately one hour later, "acting very strange[ly]" and wearing no shoes.  He again left taking the victim's vehicle.  At some point later, the victim started to walk home, ultimately receiving a ride to her residence.

Arriving home, the victim did not see her car and believed the defendant was not there.  When she entered her bedroom, the defendant, who was standing behind the door, attacked her.  He grabbed her neck repeatedly until she could not breathe and then released it, smashed her into walls and the floor, bit her, picked her up by her hair, took her phone and threw it, and screamed at her.  The victim attempted to interrupt the attack by stating that she needed to use the bathroom; when inside, she locked the door, but the defendant kicked it open, and continued to attack her, ripping her clothing off, and smashing her head into the wall, vanity, and floor.  She attempted to stop the defendant a second time by asking for water.  When the defendant let her leave to get a glass of water, she escaped through the

2

back door and ran to a neighbor's house.  The neighbor noted a "very strong smell of alcohol" coming from the victim, who was wearing no clothing; gave the victim a blanket to cover herself; and called the police.

The defendant's testimony.  The defendant testified at trial and offered a different version of events.  According to the defendant, he had one drink at the bar before driving with the victim to the restaurant.  After arriving there, he and the victim argued.  The defendant left and drove to the victim's residence.  He returned to the restaurant to drive the victim home, but they continued to argue, so he returned to her home and went to sleep.

Sometime later, the victim woke the defendant by screaming and ripping the blankets from the bed.  The defendant fell off the bed, and the victim slipped and fell.  She and the defendant rolled around on the floor.  The defendant testified that the victim kicked him, that he ripped her shirt causing it to come off, and that they knocked over a shelf.  The defendant testified that the victim walked down the stairs and ran out of the house, and he returned to bed and went back to sleep.  The defendant denied putting his hands on the victim's neck and testified that he kicked in the bathroom door and punched the television after she left the room.

3

Discussion. 1. Mistrial. At trial, a police officer testified that when he arrived at the scene, the victim "was very upset, screaming that someone was trying to murder her." Defense counsel moved to strike the statement and for a mistrial. The judge denied the motion for a mistrial and immediately instructed the jury that "[t]he last answer is [struck] from the record" and that the jury was not to consider the statement. The defendant argues that the trial judge abused his discretion by denying the motion for a mistrial because the testimony was so inflammatory that any curative instruction was insufficient to remedy any prejudice to the defendant. We do not agree.

"Whether to declare a mistrial is within the trial judge's discretion." Commonwealth v. Gallagher, 408 Mass. 510, 517 (1990). Where the motion is based on the jury's exposure to inadmissible evidence, the judge may "correctly rel[y] on curative instructions as an adequate means to correct any error and to remedy any prejudice to the defendant." Commonwealth v. Amirault, 404 Mass. 221, 232 (1989). The curative instruction is adequate and "as long as the judge's instructions are prompt and the jury do not hear the inadmissible evidence again, a mistrial is unnecessary." Commonwealth v. Kilburn, 426 Mass. 31, 38 (1997). Jurors are presumed to follow the judge's

4

curative instructions to disregard evidence struck from the record.  See Commonwealth v. Durand, 475 Mass. 657, 669 (2016).

Here, the judge immediately struck the officer's statement and instructed the jury to disregard it.  The statement was not repeated, and the judge reiterated during his final instructions that the jury "may not consider any answer that [he] struck from the record and told [them] to disregard."  See Commonwealth v. Garrey, 436 Mass. 422, 435 (2002).  Also, the statement was not more gripping or inflammatory than the rest of the testimony and evidence presented at trial such that the defendant was unduly prejudiced.  The victim testified that she did not think that she "was gonna get out [of] there" and that she was "fighting for [her] life"; the neighbor testified that she found the victim "lying on the floor of my porch and kind of screaming, yelling"; the police officer testified that he discovered the victim "screaming for help"; and photographic evidence of the victim's injuries was admitted in evidence.  See Commonwealth v. Doughty, 491 Mass. 788, 796-797 (2023) (judge did not abuse discretion in declining to declare mistrial where statement "which was surprise to prosecutor," was not "highlighted[,] . . . repeated or otherwise referenced" during trial); Commonwealth v. Fredette, 56 Mass. App. Ct. 253, 266 (2002) (judge did not abuse discretion in declining to declare mistrial where investigating officer's statement was "relatively

5

harmless" in context and "had at most merely a cumulative impact"). In these circumstances, we discern no abuse of discretion in the denial of the motion for a mistrial.

2. Jury instructions. For the first time on appeal, the defendant raises challenges to the judge's jury instructions regarding assault and battery and self-defense. Because defense counsel did not object to the instructions at trial, we review to determine whether any error created a "substantial risk of a miscarriage of justice." Commonwealth v. Redmond, 53 Mass. App. Ct. 1, 7 (2001). When examining jury instructions for error, a reviewing court evaluates the instructions as a whole and does "not consider words from the instructions in bits and pieces or in isolation from one another." Commonwealth v. Vargas, 475 Mass. 338, 349 (2016). The court assesses "whether a reasonable juror could have used the [jury] instruction incorrectly." Commonwealth v. Rosa, 422 Mass. 18, 27 (1996).

a. Assault and battery. The defendant argues that a substantial risk of a miscarriage of justice occurred when the judge, during his introduction to the charge of assault and battery on a family or household member, incorrectly repeated one element required for conviction. As the trial judge began his instructions, he gave an overview of the elements that the Commonwealth was required to prove beyond a reasonable doubt. Within the overview, the judge repeated the intent element

6

twice, stating that the Commonwealth must prove, "First, that the defendant intended to touch the person of [the victim]; second, that the defendant intended to touch [the victim]."

To the extent this repetition was error, the judge immediately cured the error by giving complete, detailed, and accurate instructions on each element, clearly distinguishing between the first element, that the defendant touched the victim, and the second element, that the defendant intended to touch the victim. Taking the instructions as a whole, no reasonable juror would assume that the Commonwealth was not required to prove both an actual touching and intent to touch. We are confident that the repeated charge within the introduction did not materially influence the verdict; therefore, there was no substantial risk of a miscarriage of justice. See Commonwealth v. Shea, 467 Mass. 788, 796-797 (2014).

b. Self-defense. The defendant also argues that a substantial risk of a miscarriage of justice occurred because the judge stated within his instruction on self-defense that "[a] person cannot lawfully act in self-defense unless he's attacked or was immediately about to be attacked." The defendant correctly argues that an actual attack is not a prerequisite for self-defense, and that a person may act in self-defense if the person reasonably believes that a physical

attack is imminent.  However, we see little difference between saying that the defendant has the right to use self-defense if he "was immediately about to be attacked" and saying that he has the right to do so if he believes an attack is imminent. Moreover, the defendant ignores the balance of the judge's instructions.  See Commonwealth v. Glass, 401 Mass. 799, 808-809 (1988).  See also Vargas, 475 Mass. at 349.  The judge continued with the instructions, and correctly instructed that "the Commonwealth must prove one of the following things beyond a reasonable doubt":  (1) "the defendant did not reasonably believe that he was being attacked or immediately about to be attacked, and that his safety was in immediate danger;" (2) "the defendant did not do everything reasonable in the circumstances to avoid physical combat before resorting to force;" or (3) "the defendant used more force to defend himself than was reasonably necessary in the circumstances."  The instructions, which incorporated a defendant's reasonable apprehension of an imminent attack, were consistent with Instruction 9.261 of the

Criminal Model Jury Instructions For Use in the District Court (2024). There was no error.

Judgments affirmed.

By the Court (Vuono,
Massing & Allen, JJ.[2]),

Clerk

Entered: November 5, 2025.

---

[2] The panelists are listed in order of seniority.